DRINSKI *v.* DRINSKI.

1. DEEDS—MENTAL CAPACITY—EVIDENCE—CARE AND SUPPORT.
    In suit to set aside deeds and other instruments conveying prop-
      erty of mother to defendant daughter and latter's agreement
      to care for, maintain, and support her mother and make a pay-
      ment of $500 after the mother's death to defendant's brother,
      holding of the circuit judge that at the time of the transfer the
      mother was mentally competent was fully supported by the pre-
      ponderance of the proof.

2. SAME—CARE AND SUPPORT—EVIDENCE.
    Finding of trial judge that contention that defendant daughter
      had failed to perform her contract to support her mother for
      which the daughter had received deeds and other instruments
      from the mother conveying property valued at approximately
      $15,000 had not been proved by parties seeking to set aside the
      instruments by which the transaction was effected is sustained
      under record presented, especially where it is shown that upon
      termination of the daughter's home relation with her mother
      that latter struck the daughter and later stated she was going
      to kill the daughter and mother herself sought to set aside in-
      struments solely on ground of fraud.

3. EQUITY—REHEARING—NEWLY-DISCOVERED EVIDENCE—COUNTER AF-
    FIDAVITS.
    Two applications for rehearing of suit to set aside instruments
      whereby mother transferred property valued at approximately
      $15,000 to her daughter in consideration of latter's promise to
      care for, maintain and support the mother and pay $500 to
      brother after mother's death were properly denied in view of
      the fact that the alleged newly-discovered evidence was merely
      cumulative and the counter affidavits filed materially weakened
      the affidavits in support of the motions.

4. SAME—DECREE—RELIEF TO DEFENDANT.
    Provisions in decree for defendant in suit to set aside transfers
      of real and personal property to defendant daughter that the

conveyances were valid, and that the daughter had performed her agreement to support the mother, thereby practically quieting title in such defendant although she had prayed for no affirmative relief in her answer, were germane to issues presented in plaintiffs' amended bill and not error of which plaintiffs might complain.

Appeal from Cass; Warner (Glenn E.), J. Submitted June 8, 1944. (Docket No. 31, Calendar No. 42,494.) Decided September 11, 1944. Rehearing denied December 1, 1944.

Bill by Mary Dzieciniak against Joan Drinski and another to set aside a conveyance for fraud. Amended bill of complaint by Marjorie Drinski and John B. Hadden, administrator of estate of Mary Dzieciniak, deceased, to set aside the conveyance because of mental incompetency and failure of consideration. Decree for defendants. Plaintiffs appeal. Affirmed.

*Asher L. Cornelius,* for plaintiffs.

*Burns & Hadsell,* for defendant Joan Drinski.

NORTH, C. J. The original bill of complaint in this cause was filed April 23, 1942, by Mary Dzieciniak. Two of her three adult children, Joan Drinski and Ulick Drinski, were made defendants. The relief sought was cancellation of certain deeds and of the transfer of all of plaintiff's personal property, including money in the bank, to the daughter Joan Drinski, with the provision that within six years after plaintiff's death Joan would pay to plaintiff's son Ulick $500. Simultaneously with the property transfer a contract was entered into between Joan and her mother whereby the former agreed to "care for, maintain and support" her mother as long as she should live, pay all of her expenses both in ill-

ness and in health, pay the expenses of burial and the $500 above noted to Ulick. The ground upon which relief was sought was that plaintiff, a Polish woman whose knowledge of the English language was very limited, was fraudulently misled by her daughter to believe that the transfer of plaintiff's property was only testamentary in character—not an absolute transfer of title to Joan. The daughter answered denying the material allegations of the bill; but before the case was brought on for hearing the plaintiff died on July 8, 1942. On December 4, 1942, an amended bill of complaint was filed by decedent's other daughter, Marjorie Drinski, and John B. Hadden, administrator of the estate of Mary Dzieciniak, deceased. In this amended bill of complaint Joan Drinski and Ulick Drinski were made defendants. The same relief was asked as in the original bill of complaint, but primarily on the ground that at the time the mother transferred her property to Joan the former was mentally incompetent. This allegation is in the following words:

"That on said 23d day of December, A. D., 1941 (the date of the transfers to Joan Drinski), the said Mary Dzieciniak was mentally sick and disordered, and was mentally incapable of understanding or comprehending the nature of her acts, and was incapable of making a contract, or executing a deed, bill of sale or similar instrument, and was in fact *non compos mentis.*"

Plaintiffs also alleged that Joan failed to perform her contract to care for her mother. The case was brought to issue by the answer of Joan and the default for nonappearance of Ulick. After full hearing the circuit judge found as follows:

"The bill of complaint is dismissed because plaintiffs have not proved that Mary Dzieciniak was

mentally incompetent when she · executed deed (deeds), bill of sale, and agreement, or that defendant Joan Drinski failed to carry out the terms of the contract for support.''

From the decree dismissing the bill of complaint plaintiffs have appealed. We deem a complete and detailed recital of all the facts disclosed by the testimony unnecessary to decision herein, but we note the following.

At the time of the transfer of her property to the daughter Joan, Mary Dzieciniak was 55 years of age. She was a Polish woman with very limited knowledge of English, which she could neither read nor write. She lived in Cass county on a 50-acre farm which she operated, having been divorced from her former husband who was also living on a farm in the same vicinity. She was a frugal, hardworking woman, quite capable in business matters, and had become possessed of not only the farm and the usual personal property in connection therewith, but she also was the owner of a six-family flat in Gary, Indiana, and the possessor of bank deposits. While the testimony is not very definite, it is stated that the total value of all of her property was approximately $15,000. It was this property that the mother transferred to her daughter Joan on December 23, 1941.

At the time of the transfer the unmarried daughter, Joan, then 31 years of age, was living with her mother on the farm. Neither the son Ulick, who was 34 years of age, nor the other unmarried adult daughter Marjorie, resided with the mother. Joan had attended school until she finished the 7th or 8th grade, but when about 17 years of age she began working at Niles. For a time she drove back and forth with neighbors to her employment, but finally

stayed at Niles for about 5 years. Then in 1939 she returned to the farm and continued to reside there with her mother until some time after the conveyance of the property to her.

The circumstances immediately surrounding the transfer of the mother's property to Joan were as follows. On the date above noted, Mrs. Dzieciniak, in company with a neighbor, Frank Majieski, the daughter Joan and Walter Putek who described himself as Joan's boy friend, went to an attorney in Cassopolis who as scrivener prepared the instruments involved in this litigation. The attorney, who did not understand Polish, seems to have obtained his information as to what Mrs. Dzieciniak desired, at least in part, from those who accompanied her. However the attorney did testify that:

"I went further than I otherwise would, probably, in attempting to be sure that Mrs. Dzieciniak knew exactly what she was signing. Of course I don't remember what I said but I did tell her in effect this: That this was—that these were deeds and that she was disposing of her property—giving it away—so she would not have it any more. * * * She said that's what she wanted to do—give it to Joan. * * * These documents were interpreted by Mr. Majieski. I can't remember anything about what was said about her daughter Marjorie. I would say at the time, on the 23d day of December, 1941, that she was and had mental competency to make the instruments in question."

After the instruments of transfer had been completed, Mrs. Dzieciniak went to the probate court and obtained possession of a will which she had left there with the seeming purpose of destroying it.

Joan and her mother continued living at the farm home until about April 19 or 20, 1942; the exact day

is not definitely fixed. There is some testimony that notwithstanding the transfer of all her property to Joan, the mother transacted certain items of business in the same manner as though she were still owner of the property. About the date last above noted, a quarrel, and according to some testimony a physical encounter, occurred between the mother and Joan. This resulted in Joan leaving home and having practically all of the personal property removed from the farm, leaving only a very scanty amount of household furnishings and food for the mother. The latter shortly went to reside for a few days in the home of her former husband, but thereafter she resided with her daughter Marjorie in South Bend, Indiana, until about June 15, 1942. At this time the mother became violently insane. Thereafter until her death July 8, 1942, she was an institutional inmate and markedly insane.

The mother filed the original bill of complaint above noted promptly following the trouble between her and Joan. The record discloses that formerly there had been an unfriendly relation between Marjorie and her mother, and that prior to 1941 the mother instituted litigation against Marjorie to cancel a deed, and was "very angry." with Marjorie. There is also testimony that Mrs. Dzieciniak had said that her son Ulick had some shortcomings in that he spent "all money anyway for drinking," and "if she gave him more that he would spend it." Ulick, called by plaintiffs under the statute for cross-examination,* was one of the five witnesses who testified in behalf of plaintiffs.

A careful review of this record discloses that the testimony of something like 18 witnesses who testi-

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—Reporter.

fied in behalf of Joan quite conclusively shows that at the time of the execution of the challenged instruments Mary Dzieciniak was thoroughly competent to transact business and that the disposition that she made of her property to her daughter Joan was one that she had been contemplating for some time. For example the witness Frank Majieski who was a neighbor of Mrs. Dzieciniak and who accompanied her to Cassopolis at the time of the transaction in question testified:

"Well I was taking her a lot of times and she was telling me that she is going to sign up everything for Joan because the other daughter no good—she cheated her too much. That is what she told me."

The holding of the circuit judge that at the time of the transfer of the property to Joan her mother was mentally competent is fully supported by the preponderance of the proof. As noted above, it was some considerable time after the challenged transaction that Mrs. Dzieciniak filed in her own right the original bill of complaint herein.

Appellants also urge that cancellation should have been decreed on the ground that Joan failed to perform her contract to support her mother. The trial judge's finding that plaintiffs did not prove this contention is sustained by the record.

At the trial plaintiffs' counsel invoked the statute (3 Comp. Laws 1929, § 14219 [Stat. Ann. § 27.914]) which prohibited Joan from testifying to matters equally within the knowledge of her deceased mother, and in consequence thereof there is scanty competent testimony of the exact facts and circumstances under which the home relations between Joan and her mother were terminated. Some of such facts and circumstances which do appear in the record have been hereinbefore noted. But in ad-

dition the following seems quite pertinent to this phase of the case. Promptly after the difficulty which resulted in the separation, Mrs. Dzieciniak filed a bill of complaint wherein, among other relief, she sought a temporary injunction against Joan "from in any manner interfering with the sole and exclusive possession of the plaintiff in said premises." This suit was still pending when Mrs. Dzieciniak died. It is particularly worthy of note that in this suit the mother made no complaint that Joan had breached the contract for the mother's support. No relief was sought on that ground. Instead the bill was based wholly upon the mother's claim that she had been fraudulently led by Joan to believe that the transaction which occurred in Cassopolis was only a testamentary disposition of the mother's property. There is testimony to the effect that while the mother lived with Joan the latter provided the former with proper maintenance and support. There is also testimony from which the inference may be justly drawn that at the time of the separation Joan was assaulted by her mother; also that following the separation Joan's mother said "she was going to kill her daughter (Joan)."

From our review of the record as a whole, we are convinced that we would not be justified in reversing the circuit judge's holding that plaintiffs are not entitled to cancellation on the ground that Joan without just cause failed to carry out her contract for the support and maintenance of her mother. The circuit judge saw and heard the respective witnesses, and this afforded an unusual advantage in the instant case because of the highly conflicting character of the testimony of various witnesses and the quite obvious unreliability of certain portions of the testimony.

Appellants made two applications for rehearing. Each of these was denied. In these holdings we find no error for the reasons that counter affidavits were filed which met and materially weakened the affidavits in support of the motions, that for the most part the newly-discovered evidence was merely cumulative, and some of it of such character that with reasonable diligence it could have been and should have been produced at the hearing of the cause.

Appellants also assert error in the decree of the trial court on the ground it was adjudged therein:

"That the conveyances made by Mary Dzieciniak to Joan on December 23, 1941, were valid conveyances, and that Joan had performed her part of the agreement thereby practically quieting defendant's (Joan's) title to the property when the defendant, Joan Drinski, had prayed for no affirmative relief in her answer."

The provisions in the decree to the above effect were germane to the issues presented by plaintiffs' amended bill of complaint, and their inclusion in the decree was not error of which plaintiffs may complain.

The decree entered in the circuit court is affirmed, with costs to defendant Joan Drinski.

STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.