BELKIN v CITY OF BIRMINGHAM

Docket No. 77-4478. Submitted December 5, 1978, at Lansing.—Decided December 28, 1978. Leave to appeal applied for.

Maurice Belkin and Milton H. Dressner filed a petition with the City of Birmingham for the rezoning of a certain piece of property in the City of Birmingham, citing the dramatic change in character of the immediate surroundings during the 30-odd years since their property was originally zoned. The petition, requesting that the property be rezoned for commercial use, was denied. Belkin and Dressner then commenced an action against the City of Birmingham seeking a judgment that the existing zoning classification was no longer reasonable and for such other relief consistent with equity. Oakland Circuit Court, Alice L. Gilbert, J., rendered a judgment concluding that due to dramatic changes in the surrounding area, residential zoning of the subject property was no longer reasonable and enjoining the defendant from enforcing the R-6 multiple dwelling zoning classification against the plaintiffs' parcel. The judgment further ordered that the plaintiffs be permitted to develop the parcel in accordance with the city's B-3 office and commercial use zoning classification and that the plaintiffs' property be exempted from the off-street parking provisions of the defendant's ordinance. The defendant appeals, claiming 1) that it was error for the trial court to exempt the subject parcel from the city's on-site parking requirement, since the plaintiffs' complaint did not specifically request such relief, 2) that the trial

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments §§ 1, 7.
[2] 27 Am Jur 2d, Equity §§ 103, 248, 249.
[3] 5 Am Jur 2d, Appeal and Error § 703.
    27 Am Jur 2d, Equity § 266.
[4, 5] 5 Am Jur 2d, Appeal and Error § 822.
    27 Am Jur 2d, Equity § 266.
[6] 82 Am Jur 2d, Zoning and Planning § 25.
[7] 82 Am Jur 2d, Zoning and Planning § 15.
[8] 82 Am Jur 2d, Zoning and Planning § 338.
[9] 82 Am Jur 2d, Zoning and Planning §§ 326, 327.
[10] 27 Am Jur 2d, Equity § 103.

court erred in holding that the plaintiffs had sustained their burden of proving that the city's R-6 zoning of the property was unreasonable, and 3) that it was improper for the trial court to enjoin the city from enforcing the R-6 classification of the subject parcel and effectively rezone the parcel to B-3. *Held:*

1. The ruling to exempt the parcel from the on-site parking requirement was an equitable determination which was clearly germane to the issues presented. There was no reversible error arising from the fact that the plaintiffs did not specifically request, in their complaint, exemption from the on-site parking ordinance.

2. The plaintiffs sufficiently met their burden of proving that the classification of their property did preclude its use for any purpose to which it is reasonably adapted. The Court of Appeals is not convinced that had it been trial chancellor it would have reached a different result.

3. The trial court's action in enjoining the city from interfering with the plaintiffs' use of their property consistent with the B-3 classification operated merely to protect the plaintiffs from further delay, expense or harassment in what the court found to be reasonable use of the plaintiffs' property. Such action was reasonable to enforce the court's decision on the merits of the case.

Affirmed.

1. JUDGMENT—RELIEF GRANTED—RELIEF REQUESTED—PLEADING—COURT RULES.

Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings; a judgment must be based on what is proved rather than what is pleaded (GCR 1963, 518.3).

2. EQUITY—NATURE OF RELIEF—COMPLAINT.

The shape of relief in equity is not of necessity controlled by the prayer for relief in the complaint, but is formed by the court according to the germane conditions and equities existing at the time the decree is made.

3. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

Appellate Courts hear and consider chancery cases *de novo* on the record on appeal.

4. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF TRIAL COURT.

Appellate Courts give considerable weight to the findings of the trial judge in equity cases primarily because he is in a better

position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity.

5. Appeal and Error—Chancery Cases—Findings of Trial Court.

An Appellate Court will not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, it reaches the conclusion that it would have arrived at a different result had it been in the position of the trial court.

6. Zoning—Ordinances—Presumption of Validity—Case-by-Case Determination.

There is a presumption in favor of the. validity of a zoning ordinance; however, arbitrary action or the unreasonable exercise of authority may not be justified; each case must be determined upon its own facts.

7. Zoning—Municipal Corporations—Ordinances—Reasonableness.

The power granted municipalities to enact zoning ordinances is at all times limited by the word "reasonable".

8. Zoning—Reasonableness—Governmental Interest—Requested Change of Classification—Constitutional Law—Equal Protection—Just Compensation.

The correct test for judicial review of requested zoning changes is that the plaintiff requesting rezoning must show: first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, or, second, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question; persons challenging a zoning ordinance may also show that the governmental body acted unreasonably in that its ordinance denied them equal protection of the laws or failed to make just compensation where constitutionally required.

9. Zoning—Ordinances—Invalid Provisions—Equity—Injunctive Relief—Future Action by Zoning Authorities.

Courts generally will not issue injunctive orders restraining future action by municipal zoning authorities with respect to rezoning after a judicial determination of unconstitutionality of a particular provision as applied to a specific parcel of land; however, such injunctions may be permitted in certain circumstances.

10. ZONING—EQUITY—COURTS—TRADITIONAL POWER—RELIEF
    GRANTED TO ENFORCE DECISION.
    A foundation exists in the traditional power, inherent in courts of
    equity, which permits a court of equity in zoning cases to shape
    the relief granted according to the circumstances of the particu-
    lar case; while this power must be exercised with restraint, a
    court of equity is not precluded from taking action to enforce
    its decision on the merits of the case.

*Hyman, Gurwin, Nachman, Friedman & Winkel-
man* (by *Hanley M. Gurwin* and *Jeffrey N. Cole),*
for plaintiffs.

*Beier, Howlett, McConnell, Googasian & Mc-
Cann,* for defendant.

Before: D. E. HOLBROOK JR., P.J., and D. E. HOL-
BROOK and CYNAR, JJ.

D. E. HOLBROOK, J. The defendant, City of Bir-
mingham, appeals from a November 8, 1977, judg-
ment, entered in Oakland County Circuit Court,
enjoining the city from enforcing the terms of the
existing R-6 multiple dwelling zoning classification
against the plaintiffs' 1/3-acre parcel of real prop-
erty. The judgment further ordered that the plain-
tiffs be permitted to develop the said lot in accord-
ance with the city's B-3 office and commercial use
zoning classification and that the plaintiffs' prop-
erty be exempted from the off-street parking provi-
sions of defendant's ordinance.

The evidence taken at trial indicates that the
property in question is improved by a two-story
brick building, built more than 50 years ago, and
since converted into five separate apartment units.
The lot is located at the northwest corner of the
intersection of Maple Road and Chester Street in
the defendant city's central business district; it
was zoned R-6 multiple family dwelling, in 1941.

A Jacobson's Department Store complex comprising an entire city block is located at the northeast corner of the above intersection. The block located at the southeast corner of the intersection contains a church and the city post office. The property located directly south of the subject property and across Maple Road is presently vacant, however it has been purchased by the defendant city which intends to erect a public parking structure at that location. The remainder of this block contains one office building, one residence, and vacant land upon which the defendant contemplates constructing a senior citizen multiple dwelling facility.

The city's central business district continues directly east from this intersection, along Maple Road, the main east-west route of defendant city. Chester Street, which formerly was only lightly traveled, has been turned by the defendant into the westerly leg of a "ring road" encompassing the central business district. In 1966 the defendant purchased the southeast corner of plaintiffs' land in order to enlarge Chester Street and better accommodate the increased traffic flow.

Adjoining plaintiffs' land to the north and extending the length of the block is additional church property. To the west and to the north of this property is a limited amount of residential property abutted further west by city park land. Adjoining plaintiffs' land to the west is a three-family apartment; next lies a single family residence which was vacant at the time of trial; the two succeeding residences have been purchased by the city and converted to public use.

Citing the dramatic change in character of the immediate surroundings during the 30-odd years since their property was originally zoned, the

plaintiffs filed a rezoning petition with the city in July of 1974. The plaintiffs' application, seeking that the property be rezoned for commercial use, was denied in January of 1975. The instant action commenced in March 1975, with the plaintiffs alleging that the existing zoning classification was no longer reasonable, that the defendant's refusal to rezone the subject property was unreasonable, and that no present substantial relationship existed between the present R-6 zoning and the health, safety and welfare of the defendant's residents.

At trial the plaintiffs proferred substantial evidence to support the claims made above. One of the plaintiffs testified that it was not feasible to continue the present usage of the land or to redevelop it as presently zoned. He stated that the plaintiffs' efforts to sell the land or to finance improvements thereon had met with no success.

A traffic expert testified to the dramatic increase in vehicular traffic at plaintiffs' location and concluded that access to the property was thereby rendered difficult and dangerous. It was shown that the volume of traffic on Chester Street had increased by 63 per cent since 1964, with nearly 5,000 vehicles now passing in a six-hour period. Traffic on Maple had increased by 30 per cent during the same period and the following data was offered by way of illustration: almost 11,000 cars passed on Maple Road in a six-hour period; the average number of vehicles passing was 2,600 per hour; although an average of 3,300 vehicles passed per hour during the "rush" periods.

An accoustical engineer certified that tests conducted by him indicated an average noise level in excess of applicable Federal standards for residential areas. During the "rush" hour, the noise level

was measured at a mathematical average of 83 decibels.

An architect related his opinion that the subject property was not suited for residential use. In making this assessment, he stressed the unfavorable impact of the high traffic volume, the unacceptable noise level, the danger and difficulty of vehicle ingress and egress, the small size of the subject site, and the very close proximity of the department store across the street.

A real estate appraiser, called by the plaintiffs, agreed that improvement of the property was economically unfeasible as presently zoned. He also concurred in the conclusion expressed earlier that the difficulty of vehicular ingress and egress to and from the subject property rendered on-site parking overly dangerous.

Another of plaintiffs' expert witnesses, an apartment management expert, expressed the opinion that an apartment complex of ten or fewer units could not be operated economically on this property. The plaintiffs-appellees also called the Royal Oak City Planner as an adverse witness. This witness testified that the existing zoning was unreasonable, that vehicular access to the site should be minimized, that limited commercial use of the property was feasible and that some residential use of the property might be reasonable.

In an effort to rebut the plaintiffs' claims, the defendant called a real estate expert, the next-door property owner, and their own city planner. The testimony of defendant's witnesses was directed primarily toward controverting the plaintiffs' claim that the property could not reasonably be used consistent with the present residential zoning.

The real estate expert noted several advantages,

such as the proximity of city park land, to residential utilization of the subject property. He also pointed out that larger apartment complexes were being developed on major traffic arteries nearby, and that several housing units of comparable size were currently being operated in the defendant city without experiencing the negative cash flow problems testified to by plaintiffs. This expert witness also disputed estimated valuations offered by plaintiffs' expert witnesses; as might be expected defendant valued the subject parcel highly, even if used for residential purposes, while the plaintiffs contended that the value of the property varied greatly depending upon the use to which it would be put. While conceding that the plaintiffs' experts were better qualified in this area, defendant's expert also controverted plaintiffs' estimates of the probable income and expenses which would result from a new residential development.

The owner of the three-family dwelling next door to the subject property testified that she has resided at that location since 1941 and is not bothered by the traffic or by exhaust fumes. She stated that her apartments rent easily.

Defendant's city planner testified that the present zoning is reasonable. He testified that plaintiff's proposal would have the negative effects of interjecting further nonresidential activity into a primarily residential area, and of exacerbating the existing traffic problem at Maple and Chester. He further opined that plaintiffs' site was not too small for economical residential use and that the demand for apartments in Birmingham is high.

Although the parties agreed to submit proposed findings and conclusions, when they failed to reach an accord, the court independently issued its decision on July 13, 1977. In this decision, upon which

the court's November 8, 1977, judgment was based, the court concluded that due to dramatic changes in the surrounding area subsequent to 1941, residential zoning of the subject property was no longer reasonable as the property was unsuitable for such use. The court held that the property could reasonably be used for office or limited commercial use, and therefore granted the injunction referred to above. In reaching these conclusions, the court stressed the following findings of fact.

Ingress and egress to the site have become difficult and dangerous. There exists a lack of visual privacy, and because of the intense usage of the surrounding area, the site offers little "peace and quiet". As currently utilized the property presents a negative cash flow, yet the existing structure must be replaced in the near future. Financing for development is not available as currently zoned, and such development would not be economically feasible.

On appeal, the defendant first contends that it was error for the trial court to exempt the subject parcel from the defendant's on-site parking requirement, since the plaintiffs' complaint did not specifically mention such on-site parking provisions or request the relief which was ultimately granted. The plaintiffs sought several specific remedies and also "such other relief as may be warranted by the proofs and which is consistent with equity". Several witnesses unanimously testified to the danger and difficulty resulting from vehicular ingress and egress to and from the subject property. GCR 1963, 518.3, in pertinent part provides that: "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings". In applying this rule to

questions regarding the amount of damages awarded a party, this Court, in *Piatkowski v Mok,* 29 Mich App 426, 428; 185 NW2d 413 (1971), held:

"The language of [GCR 1963] 518.3, in no uncertain terms, states that a judgment must be based on what is proved rather than on what is pleaded. To base a judgment solely on what is pleaded totally ignores the word 'entitled' and the phrase 'even if' contained in GCR 1963, 518.3. The plain meaning of a general court rule should not be ignored by this Court." (Footnotes omitted.)

See also: *Gibeault v Highland Park,* 49 Mich App 736; 212 NW2d 818 (1973), *aff'd,* 391 Mich 814 (1974). The testimony alluded to above suggests that the court below properly responded to the existing conditions and equities in granting the contested relief. See *Seifert v Keating,* 344 Mich 456; 73 NW2d 894 (1955), *Kent v Bell,* 374 Mich 646; 132 NW2d 601 (1965), *Miller v Magline, Inc,* 76 Mich App 284, 315; 256 NW2d 761 (1977), *lv den,* 402 Mich 801 (1977). Also see, discussion in Ellickson, *Suburban Growth Controls: An Economic and Legal Analysis,* 86 Yale LJ 385, 489 *et seq.* (1977). Since the trial court's equitable decree granted relief which was clearly "germane to the issues presented" by the plaintiffs to the court, we find no reversible error arising from the fact that plaintiffs did not specifically request exemption from the defendant city's on-site parking ordinance in their complaint, *Drinski v Drinski,* 309 Mich 479, 487; 15 NW2d 714 (1944). As the Court said in *Advance Dry Wall Co v Wolfe-Gilchrist, Inc,* 14 Mich App 706, 712; 165 NW2d 906 (1968): "The shape of relief in equity is not of necessity controlled by the prayer, but is formed by the

court according to the germane conditions and equities existing at the time [the] decree is made."

Next, the appellant city contends that the trial court erred in holding that the plaintiffs-appellees had sustained the burden of proving that the city's R-6 zoning of the subject property was unreasonable. The proper standard for review in such a case was set forth in the oft-quoted opinion of Mr. Justice T. M. KAVANAGH in *Christine Building Co v City of Troy,* 367 Mich 508, 517–518; 116 NW2d 816 (1962):

"We hear and consider chancery cases *de novo* on the record on appeal. * * * This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge." (Citations omitted.)

See also *Kropf v Sterling Heights,* 391 Mich 139, 152, 163; 215 NW2d 179 (1974).

The zoning enabling act, MCL 125.581; MSA 5.2931, provides that:

"[R]egulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

The majority in *Christine Bldg Co,* at 516, 517, 518, held that:

"[E]ach case must be determined upon its own facts.

\*  \*  \*

" 'Under the act, arbitrary action or the unreasonable exercise of authority may not be justified. \* \* \* The presumption is in favor of validity.' *[Hitchman v Oakland Twp,* 329 Mich 331, 335; 45 NW2d 306 (1951)]

\*  \*  \*

"[Nevertheless, the power to zone] *is at all times* limited by the word 'reasonable'." (Emphasis added.) (Citations omitted.)

See also, *Kropf, supra,* 156–157.

Of late, the Michigan Supreme Court has interpreted this "reasonableness" requirement to:

"[R]equire that for an ordinance to be successfully challenged [on due process grounds] plaintiffs prove:

" '[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself \* \* \* or .

" '[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' *[Kropf v Sterling Heights]* 391 Mich 139, 158 [215 NW2d 179 (1974)]." *Kirk v Tyrone Twp,* 398 Mich 429, 439; 247 NW2d 848 (1976).

The plaintiffs may also show, of course, that the city acted unreasonably in that its ordinance denied the plaintiffs equal protection of the laws or failed to make just compensation where the Constitution requires. *Kropf,* at 156–157.

In the instant case, the plaintiffs claimed that R-6 zoning of the subject property was a denial of due process for both of the reasons stated above; further, the plaintiffs contended that residential

zoning of the property rendered it economically unproductive, thereby depriving them of a valuable property right. The evidence in support of these contentions has been thoroughly summarized above. The evidence indicates, and the trial court found, that due to the change in character of the surrounding area, the greatly increased traffic volume, the difficulty of access, the lack of "visual privacy", the small size of the lot, and the "unacceptable" noise level, the R-6 classification of the subject property no longer advanced a legitimate governmental objective. Residential use of the property was no longer "feasible" under the circumstances, and also did not contribute to the public health, safety or welfare. See, *e.g.*, *Gust v Canton Twp*, 342 Mich 436; 70 NW2d 772 (1955).

The lower court's finding that "[t]he present zoning of the land has deprived the plaintiffs of the enjoyment of their property for any use to which it is reasonably adapted" was based upon evidence that the property, in its existing condition, generated a negative cash flow. The court also relied upon the plaintiffs' evidence showing that multiple residential use development was impractical and that financing would be unavailable for such development.

Applying the standard set forth above to the lower court's conclusion that R-6 zoning of the subject property is "unreasonable", we are not convinced that had we been trial chancellor we would have arrived at a different result. The evidence adduced at trial strongly supports the determination that the defendant city's classification of the subject property no longer operates to benefit the general welfare. Further, the evidence does suggest that as presently classified, the subject property has little or no economic value. The

plaintiffs met their burden of proof. We find that the circuit court correctly held the defendant city's zoning ordinance to be unconstitutional as applied to the plaintiffs' property, under the standard applied in *Christine Bldg* and *Kropf, supra.* R-6 classification of this property *does* "preclude its use for any purpose to which it is *reasonably* adapted". *Kirk, supra,* at 439, citing *Kropf,* at 163. (Emphasis added.)

. Finally, the defendant city decries the lower court's action in enjoining the city from enforcing its R-6 classification of the subject parcel and in effectively "re-zoning" the parcel B-3, office-limited commercial-residential. As pointed out in 86 Yale LJ 385, 490, *supra,* confusion over the proper relief to be awarded in zoning cases has continued at least since the United States Supreme Court's decision in *Nectow v City of Cambridge,* 277 US 183; 48 S Ct 447; 72 L Ed 842 (1928). Says the author:

"As one of the few Supreme Court decisions on zoning, *Nectow* has been an influential case. Its impact has been detrimental in three respects. First, by grounding relief on the Federal Constitution, the Supreme Court federalized an issue of landowner rights that it should have left to state courts and state constitutions. Second, the case has been construed to mean that a landowner's standard remedy against overly restrictive zoning should be some form of injunctive relief and not damages. Third, by failing to specify what type of injunctive relief the landowner was to receive, *Nectow* reinforced the judicial tendency toward sloppiness in the specification of remedies in zoning cases."

One impact which this confusion has had upon the Michigan law of zoning is illustrated by the concluding paragraphs of the Court of Appeals' opinion in *Daraban v Redford Twp,* 15 Mich

App 132, 136–137; 166 NW2d 295 (1968), *aff'd,* 383
Mich 497; 176 NW2d 598 (1970). In a section later
adopted verbatim by the reviewing court, the
unanimous panel stated:

"Generally, the courts will not issue injunctive orders
restraining future action by municipal zoning authori-
ties with respect to rezoning after judicial determina-
tion of unconstitutionality of a particular provision as
applied to a specific parcel of land. *Christine Building
Company v. City of Troy* (1962), 367 Mich 508 [116
NW2d 816] (where 'under the present record' the re-
fusal of the trial court to set minimum lot sizes was
affirmed); *Roll v. City of Troy* (1963), 370 Mich 94 [120
NW2d 804].

"A review of the cases indicates, however, that *such
injunctions have been permitted in certain circum-
stances. Industrial Land Company v. Birmingham*
(1956), 346 Mich 667 [78 NW2d 656]; *Long v. City of
Highland Park* (1950), 329 Mich 146 [45 NW2d 10];
*Redford Moving & Storage Company v. City of Detroit*
(1953), 336 Mich 702 [58 NW2d 812]; *Dequindre Devel-
opment Company v. Charter Township of Warren*
(1960), 359 Mich 634 [103 NW2d 600]; *Lacy v City of
Warren* (1967), 7 Mich App 105 [151 NW2d 245]."
(Emphasis added.)

None of the cases cited above, however, has ex-
plained under which circumstances the court may
depart from the general rule and invoke injunctive
restraints against future municipal action.

We find that such a foundation must exist,
nonetheless, in the traditional power, inherent in
courts of equity, to shape the relief granted accord-
ing to the circumstances of the instant case. *Sei-
fert v Keating, supra,* and *Kent v Bell, supra.*
While the line of cases including *Christine Bldg
Co, supra,* and *Roll v City of Troy,* 370 Mich 94;
120 NW2d 804 (1963), indicate that this equitable
power must be exercised with restraint (it won't be

utilized to create entirely new minimum lot sizes, for example), it does not preclude a court from taking action to enforce its decision on the merits of the case. In the instant case, the court's action in enjoining the city from interference with the plaintiffs' use of their property consistent with the B-3 classification operated merely to protect the plaintiffs from further delay, expense or harassment in what the court found to be reasonable use of the plaintiffs' property.

We affirm.