ARMCO STEEL CORPORATION v DEPARTMENT OF TREASURY

Docket No. 51354. Submitted May 5, 1981, at Lansing.—Decided November 17, 1981. Leave to appeal applied for.

Armco Steel Corporation and others who had paid franchise fee deficiencies following an audit by the Department of Treasury for tax years prior to 1975 brought an action in Ingham Circuit Court seeking to have declared unconstitutional 1978 PA 392, which declared franchise fee deficiencies paid for the years preceding 1975 following an audit by the Department of Treasury to be valid. Along with seeking the declaratory judgment, plaintiffs sought superintending control over the actions for refunds of the franchise fee deficiencies in question then pending in the Michigan Tax Tribunal and the Court of Claims. An order of superintending control was issued directing the Tax Tribunal and the Court of Claims to hold the actions for refunds in abeyance pending the decision in the declaratory judgment action. The Department of Treasury's applications for leave to appeal from that order to the Court of Appeals and the Supreme Court were denied. On motion of plaintiffs and without notice to defendant, the Court of Claims cases were consolidated before Robert Holmes Bell, J., the trial judge in the declaratory judgment action, including three Court of Claims cases which had been assigned to Charles Wickens, J., who was sitting on the Court of Claims by assignment. Defendant sought superintending control in the Court of Appeals, which was denied. Judge Bell thereafter held that 1978 PA 392 unconstitutionally denied equal protection of the law to those franchise fee taxpayers who prior to 1975 paid deficiencies resulting from field audits and who had filed for a refund within the statutorily authorized time limit. Defendant appeals. Plaintiffs cross-appeal. *Held:*

1. The 1978 act of the Legislature whereby they made valid those payments of franchise fee deficiencies resulting from field audits in the years prior to 1975 unconstitutionally denied equal protection to those taxpayers who paid such increased

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 72 Am Jur 2d, State and Local Taxation § 1075.
[3] 16A Am Jur 2d, Constitutional Law §§ 744, 745, 825, 826.

fees, since by that act those taxpayers who paid such added fees were denied refunds while similarly situated taxpayers who refused to pay such additional fees escaped liability on the deficiency assessments.

2. While both the joinder of the Court of Claims cases without notice to defendant and the transfer of three of those cases from the judge to whom they were assigned to the trial judge in the present declaratory judgment action were improper, nothing would be served by remanding for reassignment and rehearing. Since it was not alleged that the consolidation of the Court of Claims cases or the reassignment of trial judges in those cases was motivated by impermissible considerations and there was no allegation of bias or partiality by the trial judge herein, a reversal and remand for reconsideration would be wasteful of judicial resources.

3. The trial judge properly limited its order of judgment to those taxpayers who satisfied the statutory filing requirement, since the unconstitutionality of the 1978 act does not defeat the defendant's statute of limitations defense.

Affirmed.

1. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The 1978 act by which the Legislature declared payments and refunds made prior to 1975 under the former franchise fee act following a field audit by the Department of Treasury to be valid is unconstitutional in that it denies equal protection as to those taxpayers who paid the deficiency assessments (MCL 450.321; MSA 21.213[1]).

2. TAXATION — FRANCHISE FEES — CONSTITUTIONAL LAW — DUE PROCESS.

The 1978 act by which the Legislature declared payments and refunds made prior to 1975 under the former franchise fee act following a field audit by the Department of Treasury to be valid does not violate the constitutional right to due process of law (MCL 450.321; MSA 21.213[1]).

3. COURTS — JUDGMENTS — PARTIES — CONSTITUTIONAL LAW.

A court determining the constitutionality of a statute may in its order of judgment designate the class of individuals or entities affected by the court's declaration that the statute is unconstitutional.

*Dickinson, Wright, McKean, Cudlip & Moon* (by

*T. Donald Wade* and *Benjamin O. Schwendener, Jr.),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

Before: M. J. KELLY, P.J., and BRONSON and R. M. DANIELS,* JJ.

PER CURIAM. Plaintiffs brought this action in the Ingham County Circuit Court seeking a declaratory judgment as to the scope and validity of MCL 450.321; MSA 21.213(1). The circuit court determined that the statutory provision in question denied plaintiffs equal protection of the law. From this determination defendant appeals as of right. Plaintiffs cross-appeal, claiming one portion of the order should be deleted.

The origin of this case can be traced to *Borden, Inc v Dep't of Treasury,* 391 Mich 495; 218 NW2d 667 (1974). In that case, the Supreme Court held that once the Department of Treasury computed Borden's franchise fee based on the corporation's annual report, it had no authority to conduct an audit and recompute the fee or to recompute it if it subsequently obtained what it regarded as more accurate information.[1] *Borden* was decided by an

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The basis of *Borden* has historical roots. The franchise fee was originally a license fee and not intended as a revenue-raising measure. The franchise fee would be computed promptly after receipt of the corporation's annual report and such additional information as required. See, for instance, *In re Appeal of Hoskins Manufacturing Co,* 270 Mich 592, 596-597; 259 NW 334 (1935). When in later years the franchise fee became a revenue-raising measure, the statutory procedures for collecting the tax remained unaltered by the Legislature. *Borden* declined to permit the Department of Treasury to alter the collection procedures absent legislative action.

equally divided Court. However, in *Clark Equipment Co v Dep't of Treasury, Revenue Division,* 394 Mich 396; 230 NW2d 548 (1975), the opinion for affirmance in *Borden* was adopted by a majority of the Court.

The legislative response to *Borden* and *Clark* was the passage of 1975 PA 13. Among other things, this act specifically authorized the Department of Treasury to audit those corporations which were subject to the franchise fee. MCL 450.309b; MSA 21.210b.[2] However, in *International Business Machines Corp v Dep't of Treasury,* 75 Mich App 604; 255 NW2d 702 (1977), *lv den* 401 Mich 816 (1977), this Court held that 1975 PA 13 would be applied prospectively only since there was no clear indication that the Legislature intended the act to have retroactive effect.

Thereafter, this Court ordered refunds to taxpayers who had paid deficiencies based on unauthorized field audits and recomputations. *St Clair-Macomb Consumers Cooperative, Inc v Dep't of Treasury, Corp Franchise Fee Division,* 78 Mich App 287; 259 NW2d 462 (1977), *lv den* 402 Mich 869 (1978), *Giffels Associates, Inc v Dep't of Treasury,* 81 Mich App 730; 265 NW2d 809 (1978), *lv den* 403 Mich 808 (1978). The Legislature again responded, this time with 1978 PA 392; MCL 450.321; MSA 21.213(1), which provides:

"All audits performed by or at the direction of the department of treasury for the purpose of determining liability for a corporate franchise fee levied pursuant to former Act No. 85 of the Public Acts of 1921, and all

[2] This provision was repealed effective December 31, 1977, as part of the legislative decision to incorporate the franchise tax into the Single Business Tax. 1975 PA 228; MCL 208.1 *et seq.;* MSA 7.558(1) *et seq.* However, by 1975 PA 230, this provision could extend beyond the repeal date to the extent necessary for enforcement and collection of the franchise tax.

payments received and refunds made on the basis of those audits before the repeal of former Act No. 85 of the Public Acts of 1921 are declared to be valid and to have been in fulfillment of the legislative purpose to provide for fair administration and enforcement of that act."

Plaintiffs contend that this remedial statutory provision is unconstitutional as a violation of equal protection of the law, US Const, Am XIV; Const 1963, art 1, § 2, and as violative of Michigan's constitutional provision requiring uniformity of taxation, Const 1963, art 9, § 3. The trial court agreed with plaintiffs. We, in turn, affirm the lower court for the reasons stated in its excellent opinion as follows:

"Clearly 1978 PA 392 unconstitutionally discriminated between two groups of taxpayers who are in reality but one class. Both groups are corporations doing business in Michigan subject to liability for the payment of franchise fees. In both instances a field audit and/or a recomputation resulted in a deficiency tax assessment. However, in one group, the taxpayer chose not to pay and as a result of appellate court interpretation was deemed to have no such tax liability. Therefore, the assessment determination was held null and void. In the other group were the taxpayers—presumably of the group plaintiffs comprise—who paid the deficiency assessments when notified and subsequently learned of the unlawfulness of the deficiency. 1978 PA 392 is therefore used as a shield to avoid the constitutional right of equal protection of the laws.

"Defendant cites the recent Court of Appeals decisions in *American Amusement v Dep't of Revenue* [91 Mich App 573; 283 NW2d 803 (1979), *lv den* 407 Mich 942 (1979), *app dis* 446 US 931; 100 S Ct 2145; 64 L Ed 2d 783 (1980)] * * * for the proposition that the legislature is given wide latitude in classifying taxpayers. But these cases reiterated the principle that the classification must bear a rational basis and not be palpably

arbitrary; that the classification according to *Allied Stores of Ohio v Bowers,* 358 US 522, 528; 79 S Ct 437; 3 L Ed 2d 480 (1959)

" 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation * * *. That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy.'

"This court searches in vain for any reasonable distinction between the two groups at issue. Both parties to this lawsuit appear to concede that the designed purpose of 1978 PA 392 was to save the state money; that without 1978 PA 392 defendant department would have been liable for a return of all monies properly and timely requested which had previously been paid as a result of an unlawful assessment of deficiency. Therefore, the inescapable conclusion is that 1978 PA 392 was enacted for the specific purpose of terminating a judicially created right to refund thereby creating an arbitrary and unreasonable distinction between said two groups which, but for its passage, would have been one classified group of taxpayers.

"Defendant repeatedly argues that plaintiffs owed the money and haven't contested they owed the money. Therefore, defendant concludes plaintiffs paid all they owed and can now not be heard to complain. This court believes that argument is frivolous and shallow just as is the argument of the defendant that the appellate courts said the means only of collecting the tax was illegal but the tax was legal. Such distinctions are meaningless and if adopted would prohibit any judicial inquiry into a question of due process. The question here is far more than whether plaintiffs 'legally owe' the taxes paid.

"Defendant's most serious inconsistency is its repeated argument that the appellate courts created the 'unequal class' and it was the wisdom of the legislature in 1978 PA 392 which tried to 'uncreate the unequal classes'. Defendant completely misses the point made in *Borden, Inc v Dep't of Treasury, supra,* and *Clark Equipment v Dep't of Treasury, supra.* The Court quite obviously in those cases interpreted the statutory au-

thority given the defendant department and concluded it had exceeded such authority. Therefore, the defendant's repeated references in their brief to the Court of Appeals 'surrendered meekly' and 'abrogated their responsibilities and the legislature was forced to step in and take the necessary steps to correct a grave injustice' (brief, p 19) is an affront to the judicial process of the State of Michigan by the Attorney General."

The only conceivable rational basis for distinguishing the two groups in question is administrative convenience. See, for instance, *CarMichael v Southern Coal & Coke Co,* 301 US 495; 57 S Ct 868; 81 L Ed 1245 (1937), *New York Rapid Transit Corp v City of New York,* 303 US 573; 58 S Ct 721; 82 L Ed 1024 (1938). It would undoubtedly be easier for defendant to retain the funds in its hands than to collect deficiencies from unwilling taxpayers. Nonetheless, defendant has never argued that the class differentiation created by enactment of MCL 450.321; MSA 21.213(1) is justifiable on the basis of administrative convenience. Moreover, the mere fact that a distinction between groups promotes some administrative convenience is not always sufficient to sustain a classification. Thus, in *Simpson v Warren,* 106 Fla 688; 143 So 602 (1932), the Florida Supreme Court struck down as invalid a statute which repealed another tax act and provided that those who had not paid the tax had no liability while those who had already paid were not entitled to a refund. In *Simpson,* the Court said:

"Where a statute which provides for the collection of a particular tax is valid, and taxes from some have been collected under it, the Legislature is without power to unconstitutionally discriminate against, and deny the equal protection of the laws to, the class of taxpayers who have already paid such tax while the

statute was in force, by arbitrarily remitting or wiping out by repeal of the statute or otherwise the liability of those who have by their delinquency evaded or postponed payment for the time being." 143 So 602, 603.

See, also, *Sheppard v Hidalgo County,* 126 Tex 550; 83 SW2d 649, 653 (1935), *City of Raleigh v Jordon,* 218 NC 55; 9 SE2d 507, 508-510 (1940) (Stacy, C.J., Barnhill and Winborne, JJ., *dissenting).*

In both *CarMichael, supra,* and *New York Rapid Transit Corp, supra,* differences between the allegedly similar groups were considered sufficient to uphold the tax schemes on the basis of administrative convenience.[3] In this case, however, the only distinction between the two groups of corporate taxpayers established by the scheme is that one group paid the deficiencies assessed and the other group refused. This "distinction" is of the type correctly analyzed as insufficient to justify unequal treatment in *Simpson, supra.*[4]

[3] In *Carmichael,* the two groups were Alabama employers with eight or less employees and those with more. The Supreme Court upheld the Alabama Unemployment Compensation Act, which exempted from paying taxes needed to support the system those employers with eight or fewer employees, on the basis that it could not be said that the expense and inconvenience of collecting the tax from the small employers would not be disproportionate to the revenue obtained. *CarMichael* also recognized that at some point the line drawn between exempt and non-exempt taxpayers could be clearly arbitrary and fail to fall within "the twilight zone between those members of the class which plainly can and those which plainly cannot expediently be taxed". The separate groups in *New York Rapid Transit Corp* were "utilities", as defined by New York statute, subject to the supervision of the Department of Public Service and those not. The former group was required to pay a certain excise tax while the latter were not. Administrative convenience in collection and verification of the tax due was only one of several reasons given for upholding the taxing scheme. More important to the decision was that those utilities subject to supervision were free from unlimited, direct competition from private enterprises.

[4] Almost any taxing statute creating differences in taxation between groups could be justified on the basis of administrative convenience if a showing of convenience was always sufficient to justify disparate

Plaintiffs also contend that there are due process problems presented by the fact that the statute retroactively cures a defect in the procedure followed to collect the tax. We disagree. We believe that the following excerpt from *Graham v Goodcell*, 282 US 409, 426-427; 51 S Ct 186, 192-193; 75 L Ed 415, 439 (1931), disposes of this claim:

"There is no question here as to the original liability of the taxpayers. The tax was a valid one, and the fact that the taxpayers had been indebted to the government for the amount which was subsequently collected is not now open to dispute. Delay in collection had followed upon the taxpayers' request for a consideration of their claim that the tax should be abated, and, in the mistaken belief on the part of the administrative authorities that the statute of limitations did not bar collection by the appropriate proceeding of distraint, the delay had been continued until after the statute had run. On the discovery of the mistake, as pointed out by the decision of this court, the Congress sought to prevent a refund of the amount thus collected. The question is whether these circumstances remove the case from the operation of the general rule that it is not consistent with due process to take away from a private party a right to recover the amount that is due when the act is passed. *Pacific Mail SS Co v Joliffe*, 2 Wall 450, 457, 458 [17 L Ed 805, 807 (1865)]; *Ettor v Tacoma*, 228 US 148, 156 [33 S Ct 428; 57 L Ed 773 (1913)]; *Forbes Pioneer Boat Line v Everglades Drainage Dist*, 258 US 338, 340 [42 S Ct 325; 66 L Ed 647 (1922)].

"This rule is well illustrated by the case of *Forbes Pioneer Boat Line v Everglades Drainage Dist, supra*, where the suit was brought to recover tolls unlawfully collected for passage through the lock of a state canal. The passage was free under the law as it stood at the

treatment. For instance, a state income tax statute which exempted self-employed individuals would have to be upheld since it undoubtedly is more difficult to verify and collect income taxes from these people than it is from employees whose wages are subject to tax withholding by their employers.

time, and the subsequent legislation of the state which attempted to validate the illegal collection was held to be in violation of the 14th Amendment. The court said that the legislature in 1919 could not compel plaintiff to pay for a passage made in 1917 without promise of reward, 'any more effectively than it could have made a man pay a baker for a gratuitous deposit of rolls.' But while the legislature could not in such a case retroactively create a liability, the court recognized that there is a class of cases in which defects in the administration of the law may be cured by subsequent legislation without encroaching upon constitutional right, although existing causes of action may thus be defeated."

See, also, *United States v Heinszen,* 206 US 370; 27 S Ct 742; 51 L Ed 1098 (1907) (the Court held that Congress's ratification of an illegal collection of duties on imports to the Philippines did not deprive importers of due process of law even though they had commenced an action to recover duties before passage of the ratifying statute), *Thomas Bros, Inc v Secretary of State,* 90 Mich App 179; 282 NW2d 273 (1979) (the Court held that motor vehicle repair facility fees collected over a period in which no valid administrative rule existed concerning the amount of the fee need not necessarily be refunded and that the Bureau of Automotive Repair could promulgate a valid rule to be applied retroactively).

In the instant case, the Legislature has inartfully attempted to ratify defendant's practice of recomputing fees after conducting field audits. Because this legislative attempt treats similarly situated taxpayers in an unequal manner we hold that it contravenes the constitutional guarantee of equal protection of the laws. We also believe, however, that a similar legislative enactment which treats all corporate taxpayers the same (that is, treats those corporations which refused to

pay any assessed deficiency based on the recomputation the same as those which did pay the recomputed fee) would be constitutionally sound.

Defendant also raises a claim going to whether proper procedure was followed in this case. The plaintiffs in this case commenced actions for refunds in the Tax Tribunal or the Court of Claims or both. Thereafter, plaintiffs filed this action in the Ingham County Circuit Court which sought not only the declaratory judgment but also superintending control over the Tax Tribunal and Court of Claims relative to the actions seeking the refunds. On May 25, 1979, the circuit court issued an order of superintending control directing the Tax Tribunal and the Court of Claims to hold those actions in abeyance pending a decision in this case. Defendant's application for leave to appeal that order was denied in August, 1979. The Supreme Court also denied leave. 407 Mich 942 (1979).

Meanwhile, plaintiffs' Court of Claims cases were consolidated before Judge Robert Holmes Bell, the trial judge in this declaratory judgment action. The parties agree that three of the consolidated cases had been assigned to Manistee Circuit Court Judge Charles Wickens, who was sitting on the Court of Claims by assignment. Consolidation was carried out over defendant's objections and without a hearing. It is defendant's position that the cases should have been consolidated before Judge Wickens.

Following the consolidation, defendant moved for superintending control in this Court. In February, 1980, this relief was denied without prejudice to defendant's right to file a delayed application for leave to appeal. Defendant then filed a delayed application for leave to appeal, which was denied

in December, 1980, without prejudice to defendant's right to raise the issues presented in the application by supplemental brief in this appeal.

Defendant first asserts that the court rules required all of the cases to be consolidated before Judge Wickens on the theory that the later cases arose out of the same transaction as the cases already assigned to Judge Wickens. Plaintiffs agree that the cases arose out of one transaction but do not believe that they necessarily should have been assigned to Judge Wickens. GCR 1963, 926.4[5] provides in relevant part:

"Actions Arising Out of the Same Transaction or Occurrence. Subject to subrule 925.5.

"(a) if one of two or more actions growing out of the same transaction or occurrence has been assigned to a judge, the other action or actions must be assigned to the same judge."

Contrary to the parties' assertions we conclude that the cases need not have been assigned to one judge since they did not arise out of the same transaction or occurrence. The mere fact that similar legal issues were involved in all of the cases does not mean that all of the actions arose out of the same transaction. We find no cases construing what "same transaction or occurrence" means as used in GCR 1963, 926.4(a). We conclude, however, that actions arise from the same transaction or occurrence only if each arises from the identical events leading to the other or others. For instance, several actions separately brought by various passengers of a train which derailed would arise out of one occurrence or transaction.

This is not to say that the actions should not

---

[5] For the most part the General Court Rules apply to actions in the Court of Claims. See Court of Claims Rule 4.

have been consolidated. GCR 1963, 505.1 specifically provides for consolidation in the discretion of the court where all cases involve a "common question of law or fact".

The consolidation which occurred in this case was irregular. By their own admission plaintiffs did not give notice to defendant when they moved to consolidate the various cases. This contravened GCR 1963, 119.1. Additionally, if consolidation was to be ordered, the cases should have been consolidated before Judge Wickens, who had already done substantial work on some of the cases. The reassignment of three cases from Judge Wickens to Judge Bell violated GCR 1963, 926.3 in two respects. First, Judge Wickens was not disqualified to hear the cases nor was there any "other good cause" for which he could not undertake the assigned cases. Second, even had a reassignment been properly undertaken, GCR 1963, 926.3 requires that the reassignment be by lot "to the extent feasible". The purpose behind GCR 1963, 926.3 regarding reassignments is obvious. By promulgation of the rule the Supreme Court has sought to eliminate any appearance of judicial impropriety. Such impropriety, actual or apparent only, would present itself in a system whereby the chief judge of a judicial circuit could reassign cases at will without reason. While parts of GCR 1963, 925.5 could be seen as providing the chief judge with broad powers to reassign cases, given the specific language of GCR 1963, 926.3 and the policy reasons behind the rule, we do not believe an expansive construction of GCR 1963, 925.5 is justified.

Despite the foregoing, we do not believe reversal is warranted on this basis in this case. There are no allegations made nor record evidence which

would suggest that the reassignment and subsequent consolidation was motivated by impermissible considerations. Defendant has never alleged that Judge Bell was biased or partial. As such, it would be a waste of judicial resources for us to reverse this case to have it reheard before another judge and then have it reappealed to this Court.[6]

The issue on cross-appeal concerns the emphasized portion of paragraph 4 of the trial court's order:

"1978 PA 392 is therefore unconstitutional. It violates the equal protection provisions of the United States Constitution, Am XIV, and Michigan Constitution of 1963, art 1, § 2, *as to franchise taxpayers prior to 1975 who have filed within the appropriate statutory period for a refund of taxes paid pursuant to recomputed deficiencies resulting from a field audit.*" (Emphasis added.)

Plaintiffs argue that the emphasized language should be deleted from the order as "not germane to the sole constitutional issue" presented to the circuit court. We disagree. The cases cited by plaintiffs actually cut against their position. See *Drinski v Drinski,* 309 Mich 479, 487; 15 NW2d 714 (1944), *Swan v Ispas,* 325 Mich 39, 45-47; 37 NW2d 704 (1949), which stand for the proposition that a judgment may give relief not specifically

[6] We reject plaintiffs' argument that the revision of MCL 600.6404; MSA 27A.6404 precluded the Chief Judge of the 30th Judicial District from assigning any Court of Claims cases to visiting judges outside of Ingham County. At the time of the amendment to the statute, Judge Wickens had been assigned to sit as a judge of the Court of Claims. While MCL 600.6404; MSA 27A.6404 refers to a judge "assigned into the thirtieth judicial circuit" instead of assigned into the Court of Claims, we conclude that Judge Wickens had authority to exercise jurisdiction over Court of Claims cases until his work there was completed. Plaintiffs concede that this is the position apparently taken by an "ad hoc administrative rule" of the "new" Court of Claims.

prayed for where that relief is of a character germane to the issues raised. The disputed provision is clearly germane as to the question of which corporations are and which corporations are not potentially eligible for refunds.

This case only concerns franchise fees paid in 1974 and earlier. By 1975 PA 13,[7] the Legislature specifically provided for the right to audit and recompute franchise fees due. As noted previously, this Court held that the provision did not apply to the tax years 1974 and before. *International Business Machines, supra.*

By MCL 450.310; MSA 21.210(1), which was in effect during the period involving the franchise fee dispute, a corporation has three years from the date its payment was legally due to petition for a refund based on an alleged overpayment.[8] There is no reason why the unconstitutionality of 1978 PA 392 should defeat defendant's statute of limitations defense.

Affirmed. No costs, significant constitutional issues concerning the validity of a statute having been under consideration.

---

[7] MCL 450.309b; MSA 21.210b.

[8] By 1975 PA 230, MCL 450.310; MSA 21.210(1) was repealed effective December 31, 1977, contemporaneously with the effective date of the Single Business Tax Act. Thus, the provision was repealed effective three years after the last tax date in which the recomputation problem would exist.