SCHWARTZ v CITY OF FLINT

Docket No. 70806. Argued March 5, 1985 (Calendar No. 3). Decided October 28, 1986.

Joseph Schwartz and Lillian Schwartz, owners of certain undeveloped property within the City of Flint, brought an action in the Genesee Circuit Court against the city, seeking a declaration that the zoning classification of the property which limited use to construction of single-family homes with minimum lot sizes of 5,000 square feet was unconstitutional, and an order requiring the city to issue a building permit for the construction on the property of multiple-family garden apartments and townhouses.

The court, Harry B. McAra, J., initially declared the classification unconstitutional as applied to the Schwartz property, but set aside the judgment on the city's motion and permitted several neighboring landowners to intervene. Thereafter, the city rezoned the property so as to allow construction of only single-family homes with minimum lot sizes of 10,000 square feet, and the court sustained the classification. The Court of Appeals, D. E. HOLBROOK and T. M. BURNS, JJ. (ALLEN, P.J., dissenting), reversed, holding the rezoning classification unconstitutional as applied to the property, and, consistent with the procedure prescribed by *Ed Zaagman, Inc v City of Kentwood,* 406 Mich 137 (1979), remanded the case to the city zoning board for further proceedings (Docket No. 55563).

The city did not offer a proposal for use of the plaintiffs' land or an amendatory ordinance to the circuit court within the sixty-day time period as prescribed by *Zaagman.* Subsequently, following reception of proposals from both parties and an evidentiary hearing to determine the most equitable or midsatisfactory use of the property, the circuit court ordered different uses for various "tiers" of the plaintiffs' property, including single-family homes on lots of 10,000 square feet at the minimum in the first tier, duplexes in the second, and townhouses in the third. The order also limited the means of access to the

REFERENCES

Am Jur 2d, Zoning and Planning §§ 11 *et seq.,* 18 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Zoning.

property and required the plaintiffs to obtain a right-of-way over adjoining property. The Court of Appeals, ALLEN, P.J., and CYNAR and MARTIN, JJ., affirmed, but modified the order to permit townhouses as well as duplexes in the second tier (Docket No. 55563). The plaintiffs appeal.

In an opinion by Justice BRICKLEY, joined by Justices CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

A court, after declaring a zoning ordinance to be unconstitutional, additionally may declare a proposed land use reasonable and enjoin interference with the use, where the plaintiff has shown the use to be reasonable by a preponderance of the evidence. For doctrinal and practical reasons the procedure established in *Ed Zaagman, Inc v Kentwood,* 406 Mich 137 (1979), for providing relief in such cases is repudiated.

1. Zoning is primarily a legislative function, subject to judicial review only to determine whether the power as exercised involves an undue invasion of private constitutional rights without reasonable justification in relation to the public welfare. The power of the judiciary should extend far enough in zoning cases to allow shaping of necessary relief without usurping legislative prerogative. The procedure established in *Zaagman* resulted in improper usurpation by the judiciary of legislative functions and impermissibly offended the doctrine of separation of powers. In addition, its application has resulted in excessive delays.

2. Courts may declare zoning ordinances unconstitutional, but should not move into the realm of a municipal legislature in fashioning relief for plaintiffs that have successfully challenged the ordinances. Where an ordinance is found to be unconstitutional, and the plaintiff has shown by a preponderance of the evidence that a proposed specific use is reasonable, the court may additionally declare the use to be reasonable and enjoin the municipality from interfering with that use.

3. A zoning authority is free to rezone upon a declaration that an existing ordinance is unconstitutional. Where a proposed use additionally has been shown to be reasonable, rezoning must be consistent with the limiting conditions of the proposed use. If reasonableness has not been shown, the authority may rezone, unrestrained by such limitations.

Reversed and remanded.

Justice LEVIN, joined by Chief Justice WILLIAMS, would modify the *Zaagman* procedure and stated:

1. After a judicial determination that a zoning classification is unconstitutional as applied:

a. Enforcement of the ordinance should be enjoined. Not later

than sixty days before the date of trial, the city may present an alternative proposal for the specific use of the property. The court may require the landowner to submit an alternative proposal within the same time limitation.

b. Where timely presented, the court expeditiously should consider the city's proposal to determine whether it provides the landowner with a feasible alternative use as applied to the property. If the court determines that a feasible alternative has been provided, it would be obliged to enter a judgment declaring that to be the alternative use that may be made of the property.

c. Where the city fails timely to submit a specific use proposal, or it is determined that no feasible alternative has been provided or that the city's presentation was made in bad faith or for the purpose of delay, the court would conduct an evidentiary hearing to determine an appropriate remedy. Both parties could submit specific use proposals to the court, but the city's proposal would not be given priority over other feasible alternative uses.

d. Following the hearing, and after considering at least the objectives set forth in the applicable zoning enabling act, reasonable uses of the land, including economic considerations, compatibility with surrounding properties and developments, and the zoning plan contained in the zoning ordinance, the court would fashion a remedy that identifies a feasible specific land use or uses to be permitted, eliminates unreasonable or inappropriate zoning land use restrictions, and which might include conditions for use of the land, appropriate injunctions, and other provisions and orders as might be deemed necessary to effectuate the remedy. In addition, the court would be required to file findings of fact.

2. The procedure would reduce delay and the length of litigation because, although the city would be given a "second chance" to provide a feasible alternative use for the property, it also would be given an incentive to act reasonably and without delay. In following the procedure, a court would not exercise legislative power delegated to local zoning authorities because it would only be after the court finds that local authorities have failed timely to provide a feasible alternative to an unconstitutional application of a zoning ordinance that the court would be called upon to formulate a remedy for the unconstitutional deprivation of property rights. Nor would the procedure preclude a city from rezoning the property, but existing zoning and such a rezoning would not bar or impede use of the parcel as provided by the judgment and order of the court.

3. In this case, the city failed to submit an amendatory

ordinance or other proposal to the court within the requisite time. The court conducted an evidentiary hearing, receiving testimony and proposals from both parties concerning an appropriate use of the plaintiffs' property. In formulating a remedy after a determination that a zoning classification was unconstitutional as applied, and after the local zoning authorities failed timely to provide a feasible alternative use for the property, the court did not impermissibly exercise powers belonging to the legislative branch.

4. The judgment and order of the court did not amount to a deprivation of property without due process of law. The court considered several potential uses of the land as well as their anticipated effect on the surrounding properties and neighborhood. It did not clearly err in imposing separate restrictions on different portions of the property or in limiting the total number of residential units.

5. The limitation of access to the property, however, was clearly erroneous. The plaintiffs had no enforceable agreement to obtain the proposed right-of-way over the adjoining parcel. The court's decision in effect would completely landlock an otherwise developable parcel.

6. After more than fifteen years, it is time for this litigation to come to an end so that the plaintiffs may develop their property if they wish to do so. These portions of the judgment and order of the judge that prohibit access through the outlot and require that the plaintiffs obtain a right-of-way over an adjoining parcel should be vacated. Until such time as other means of access to and from the plaintiffs' parcel are in place, access should be provided through the outlot. In all other respects, the judgment and order of the circuit judge, as modified and affirmed by the Court of Appeals, should be affirmed.

Justice ARCHER took no part in the decision of this case.

120 Mich App 449; 329 NW2d 26 (1982) reversed.

*Ed Zaagman, Inc v Kentwood,* 406 Mich 137; 277 NW2d 475 (1979), overruled.

OPINION OF THE COURT

1. ZONING — CONSTITUTIONAL LAW — COURTS — REASONABLE USE OF LAND — REMEDIES.

A court, after declaring a zoning ordinance to be unconstitutional, additionally may declare a proposed land use reasonable and enjoin interference with the use, where the plaintiff has shown the use to be reasonable by a preponderance of the evidence.

2. ZONING — CONSTITUTIONAL LAW — REASONABLE USE OF LAND —
   REZONING.

   A zoning authority is free to rezone upon a declaration that an
   existing ordinance is unconstitutional; where a proposed use
   additionally has been shown to be reasonable, rezoning must be
   consistent with the limiting conditions of the proposed use.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ell-
mann* and *Jay W. Tower*) for the plaintiffs.

*S. Olof Karlstrom, Dennis M. Haley,* and *Donald
H. Robertson* for the defendant.

Amici Curiae:

*Lawrence R. Ternan* for Public Corporation Law
Section, State Bar of Michigan.

*Stephen A. Bromberg, Gerald A. Fisher, James
A. Ginn, Norman Hyman,* and *Edward Barry Stul-
berg* for Real Property Law Section, State Bar of
Michigan.

BRICKLEY, J. We granted leave to appeal in this
case to consider two questions. The first is whether
*Ed Zaagman, Inc v City of Kentwood,* 406 Mich
137; 277 NW2d 475 (1979), should be overruled or
modified. The second is whether the declaratory
judgment and order entered by the circuit judge
pursuant to the *Zaagman* procedure, as affirmed
and modified by the Court of Appeals, unconstitu-
tionally deprived the plaintiff of his property with-
out compensation or without due process of law.
Because we answer the first question by overruling
*Zaagman,* we do not find it necessary to reach the
specifics of the second question, other than to hold
that the relief granted in this case was improper
for the same reasons that the *Zaagman* procedure
is now rejected.

I

This case traces its origins to 1967, when the plaintiff, Joseph Schwartz, requested that the City of Flint rezone his property. After nearly fifteen years of litigation, the plaintiff's land remains undeveloped.

Schwartz owns a twenty-eight acre parcel of undeveloped land in the City of Flint. Immediately west of the Schwartz parcel is Thread Lake, part of which passes through the Schwartz parcel. Approximately eleven acres of the parcel, including most of the western boundary and all the northern boundary, are located within the one-hundred-year flood plain of Thread Lake and Thread Creek.

The property immediately north of the Schwartz parcel is owned by the city. The property immediately east is an eleven-acre parcel that, like the Schwartz parcel, is privately owned and undeveloped. Immediately south are several subdivided residential lots containing single-family homes on the north side of Woodslea Drive, which runs roughly east and west. These homes are on the northern edge of a large residential neighborhood.

At the time Schwartz purchased the parcel in 1966, it was zoned A-2, which permitted single-family homes with minimum lot sizes of 5,000 square feet. An outlot owned by the plaintiff provides access to the property. In 1967, Schwartz requested that the parcel be rezoned from A-2 to C-1, to permit construction of multiple-family garden apartments and townhouses. In 1971, after the city denied the request to rezone, Schwartz commenced this action, seeking a declaration that the A-2 classification was unconstitutional and an order requiring the issuance of a building permit for the proposed garden apartments and townhouses.

The judge, after an apparent settlement between

Schwartz and the city, declared the A-2 classification unconstitutional as applied to the Schwartz parcel. On the city's motion, however, the judgment was set aside, and several neighboring landowners were permitted to intervene.[1]

The city subsequently rezoned the Schwartz parcel from A-2 to A-1, which permits single-family homes with minimum lot sizes of 10,000 square feet.[2] The judge sustained the A-1 classification. The Court of Appeals, one judge dissenting, reversed and held the A-1 classification unconstitutional as applied to the Schwartz parcel. Const 1963, art 10, § 2. Similarly, see US Const, Am V, applicable to the states under US Const, Am XIV, *Chicago, B & Q R Co v Chicago,* 166 US 226; 17 S Ct 581; 41 L Ed 979 (1897). It found that the ordinance was "taking from plaintiffs the use of their property without just compensation . . . ." *Schwartz v Flint,* 92 Mich App 495, 503; 285 NW2d 344 (1979).

Pursuant to the procedure set forth in *Zaagman,*[3] the Court of Appeals remanded the cause to the Flint City Council. The city, however, failed to

---

[1] The intervening landowners have not appeared in this Court.

[2] The city asserts that the more restrictive A-1 classification was adopted on the basis of a recommendation in an independent planning study commissioned by the city. The recommendation was based on projected traffic conditions and compatibility with the homes adjacent to the southern boundary of the Schwartz parcel. These homes, while located on property zoned A-2 (minimum lot size of 5,000 square feet), are, for the most part, constructed on double lots, thus giving the appearance of an A-1 classification (minimum lot size of 10,000 square feet).

[3] We . . . hold that, subsequent to a judicial finding of zoning classification invalidity, enforcement of the disputed ordinance should be enjoined and the matter remanded to defendant city council to present, for the chancellor's consideration within 60 days of this Court's or the appropriate reviewing court's order of unconstitutionality, an adopted amendatory ordinance comporting with the dictates of equity as well as the requirements of constitutional reasonableness as applied to an aggrieved landowner's parcel.

submit an amendatory ordinance or other proposal to the circuit court within the sixty-day period prescribed in *Zaagman*.[4]

Consistent with paragraph (v) of the *Zaagman* procedure,[5] the judge received proposals from both parties and conducted an evidentiary hearing for the purpose of determining "the most equitable or 'midsatisfactory use' to be made" of the Schwartz parcel.

Specifically, upon the expiration of or within this 60-day period, the chancellor shall enter one of the following orders:

(i) If, after remand to defendant city council, plaintiff and defendant find defendant's submitted amendatory ordinance mutually acceptable, the chancellor shall order the implementation of such "midsatisfactory" amendatory ordinance.

(ii) If, after remand to defendant city council, defendant submits an amendatory ordinance unacceptable to plaintiff but embodying Justice BLACK's "midsatisfactory use" as determined by the chancellor through a balancing of equitable considerations, the chancellor shall order the implementation of such "midsatisfactory" amendatory ordinance.

(iii) If, after remand to defendant city council, defendant submits an amendatory ordinance unacceptable to plaintiff and plaintiff submits a proposed use embodying Justice BLACK's "midsatisfactory use" as determined by the chancellor through a balancing of equitable considerations, the chancellor shall order the implementation of plaintiff's proposed "midsatisfactory use."

(iv) If, after remand to defendant city council, neither plaintiff nor defendant can agree upon the other's amendatory ordinance or proposed use and the chancellor determines that neither party's proposal embodies Justice BLACK's "midsatisfactory use," the chancellor shall order the implementation of a "midsatisfactory use" after both plaintiff and defendant as well as other affected parties have had the benefit of a hearing and the submission of proofs to determine the most equitable or "midsatisfactory use" to be made of plaintiff's parcel.

(v) If, after remand to defendant city council, defendant does not submit an adopted amendatory ordinance to the chancellor for consideration within 60 days of this Court's or the appropriate reviewing court's order of unconstitutionality, we direct the chancellor to conduct a hearing supplemented by the submission of proofs by all affected parties to determine and implement the most equitable or "midsatisfactory use" to be made of plaintiff's parcel. [*Ed Zaagman, supra,* pp 166-167.]

[4] The judge denied the city's motion to extend the sixty-day period.
[5] See n 3.

The city's proposal suggested development of the parcel as a "community development project."[6] Under this proposal, garden apartments or townhouses might be constructed even in an A-1 zoning district; density restrictions would, however, limit the total number of residential units in the development project to twenty-five percent more than the number of detached single-family homes that could be constructed in the same area on minimum lots of 10,000 square feet.[7]

Schwartz proposed the construction of 144 single-family townhouses, divided into several clusters of attached units. With regard to access to and from the development, it appears that Schwartz proposed directing traffic away from the large residential neighborhood to the south and westerly of the parcel. Schwartz indicated that it might be possible to obtain a right-of-way across an adjoining undeveloped parcel, leaving the outlot for emergency use only.

The order[8] entered by the judge did not adopt either the city's or Schwartz' proposal. The order

[6] By the time of the evidentiary hearing, the city had amended its zoning ordinance to provide for community development projects within A-1 and A-2 zoning districts. Under the community development option, a developer is permitted to construct multiple-family structures, such as apartments or townhouses, if—through the use of open spaces, buffer strips and other amenities, such as tennis courts or a swimming pool—the average density of the entire development project does not exceed the equivalent of 8,000 square feet per single-family unit in A-1 districts, or 4,000 square feet per single-family unit in A-2 districts.

[7] The planning study commissioned by the city indicated that fifty-seven single-family homes on 10,000 square foot lots could be developed on the Schwartz parcel. The density requirements of the community development option would thus permit the construction of seventy-one residential units.

[8] 1. The "emergency exit only" at the northwest corner of Greenhill and Woodslea Drive is prohibited;

2. Plaintiff Schwartz must obtain the right-of-way to Terrace Drive over land zoned A-1, known as the "Patsy parcel" and not owned by him;

prescribed different uses for various "tiers" of the Schwartz parcel. The first tier, consisting of approximately 3.7 acres immediately north of the single-family homes on Woodslea Drive, was restricted to single-family homes under the A-1 zoning classification (10,000 square-foot minimum lots). The second tier, consisting of approximately 1.15 acres immediately north of the first tier, was restricted to "duplexes." On the remaining property, Schwartz would be permitted to construct 120 or, depending on the flood plain level, 124 single-family attached townhouse units, provided that the total number of units on the entire parcel did not exceed 140.

The order also prohibited the use of the outlot as a means of access to and from the Schwartz parcel, and would require that Schwartz obtain a right-of-way over an adjoining privately owned parcel.

The Court of Appeals modified the judge's order to permit "detached single-family townhouses" as well as "duplexes" in the second tier of the parcel; the judge's order was affirmed in all other re-

3. The third, fourth and fifth clusters moving from east to west will be zoned A-2 plus community development projects in the nature of single-family attached townhouse units;

4. The land, or first cluster, (Tier 1) immediately north of the single-family houses on Woodslea will be A-1 single-family detached dwellings;

5. The second cluster will be zoned as "duplexes";

6. The balance of the land (referred to in paragraph 3) shall be developed for townhouses in fee simple, having a square footage in the basement of 25 x 36, making 1700 square feet in the townhouses, with not more than 120 units with a possibility of adding four more units depending on paragraph 7;

7. The flood plain level is established at 750 feet or whatever it is at the dam;

8. Plaintiffs have the right to move dirt or fill but only with the permission of this court, the court retaining jurisdiction and permitting the DNR coming in to object;

9. The maximum number of all units on the entire parcel is to be 140;

spects. *Schwartz v City of Flint (After Remand)*,
120 Mich App 449; 329 NW2d 26 (1982).[9]

II

After careful reconsideration of the procedure of
*Zaagman, supra,* we conclude that that case should
be overruled as an improper usurpation by the
judiciary of a legislative function. In light of the
extraordinary facts of this case and of the experi-
ence of the bench and bar, generally, under the
*Zaagman* rule, we are replacing the *Zaagman*
decision with a more judicially appropriate direc-
tive.

*Zaagman* was a well-intentioned effort to utilize
the court's equity powers to minimize the side
effects of resolving lawsuits having obvious ramifi-
cations beyond the parties to the suit. However,
neither the parties nor the amici curiae[10] in this
case are entirely satisfied with the *Zaagman* proce-
dure as it has been implemented to date.

The separation of powers provision of the Michi-
gan Constitution reads:

> The powers of the government are divided into
> three branches: legislative, executive and judicial.
> No person exercising powers of one branch shall
> exercise powers properly belonging to another
> branch except as expressly provided in this consti-
> tution. [Const 1963, art 3, § 2.]

Our state system is modeled after the federal
system. The United States Supreme Court de-
scribed the separation of powers as follows:

[9] The city has not filed a cross-appeal from the Court of Appeals
modification of the circuit judge's order.

[10] The Real Property Law Section and the Public Corporation Law
Section of the State Bar of Michigan have filed briefs as amicus
curiae, outlining proposed modifications to the *Zaagman* rule.

The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct or restrain the action of the other. [*Massachusetts v Mellon*, 262 US 447, 488; 43 S Ct 597; 67 L Ed 1078 (1923).]

We, too, have emphasized:

[I]n harmony with American political theory, the State government is divided into three historic departments, the legislative, the executive, and judicial . . . .

\* \* \*

"This historical and constitutional division of the powers of government forbids the extension, otherwise than by explicit language or necessary implication, of the powers of one department to another." [*Civil Service Comm v Auditor General*, 302 Mich 673, 683; 5 NW2d 536 (1942).]

Option (v) of the *Zaagman* holding permits the court, under certain conditions,

to conduct a hearing supplemented by the submission of proofs by all affected parties *to determine and implement* the most equitable or "midsatisfactory use" to be made of plaintiff's parcel. [*Zaagman, supra*, p 167. Emphasis added.]

In addition, options (i) and (ii) require the "chancellor" to "order the implementation of such 'midsatisfactory' amendatory ordinance." *Id.*, pp 166-167.

These directives, in the words of Justice T. G. KAVANAGH, amount to "judicial zoning." We agree

with some of his observations, made in dissent in *Daraban v Redford Twp,* 383 Mich 497, 501-506; 176 NW2d 598 (1970):

> The role of the Court is not to control the direction of zoning. It is not to determine what is the best use of the land. Our role is to prevent the abuse of the zoning power—as when the ordinance in question so restricts the use of land that it amounts to confiscation by the local government.
>
> \* \* \*
>
> Zoning is a legislative function that cannot constitutionally be performed by a court, either directly or indirectly—in law or in equity. [*Id.,* pp 502-503.]

Justice KAVANAGH's comments were in keeping with pre-*Zaagman* precedent in this Court. In *Roll v City of Troy,* 370 Mich 94, 99; 120 NW2d 804 (1963), we "recogniz[ed] that zoning is a legislative function [and] we affirm[ed] the principle that courts cannot write zoning laws." Likewise, in *Christine Building Co v City of Troy,* 367 Mich 508, 515-516; 116 NW2d 816 (1962), we approved of the trial court's opinion that

> there devolved upon it no legal duty, right, or obligation to switch from the role of chancellor to that of municipal legislator for the purpose of rezoning the subject property . . . .

And in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 430-431; 86 NW2d 166 (1957), we emphasized that "this Court does not sit as a superzoning commission. . . . The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life[,]" assuming, we would now add, that that governance is performed in a constitutional manner.

On the other hand, in contrast to Justice KAV-
ANAGH's view, we also recognize the judiciary's
positive role in granting appropriate relief in zon-
ing cases where unconstitutionality has been al-
leged and proven. We agree with the majority in
*Zaagman,* pp 176-179, and with Justice BLACK's
opinion in *Dequindre Development Co v Warren
Charter Twp,* 359 Mich 634, 642-643; 103 NW2d
600 (1960), to the extent that they express the
need for courts to exercise their equitable powers
in order to fashion sufficient remedies for success-
ful plaintiffs, while doing so expediently and
within the constraints of the separation of powers.

Thus, while we reaffirm and endorse the judicial
role in declaring the unconstitutionality of zoning
ordinances generally, see *Delta Charter Twp v
Dinolfo,* 419 Mich 253, 268-269; 351 NW2d 831
(1984), we believe that the *Zaagman* decision sim-
ply went too far in its effort to guarantee a re-
placement for an unconstitutional ordinance.
There are less extreme remedies available that are
within the judicial power and that would provide
adequate relief in cases such as this one. We
advocate adoption of the one articulated in Part
III-B.

By overruling *Zaagman,* we bring Michigan in
line with the holdings of a majority of state juris-
dictions on this question. Although other states
have adopted a variety of remedies in cases involv-
ing unconstitutional zoning ordinances, the major-
ity are in agreement that courts should not at-
tempt to perform the legislative functions of the
zoning authority. See 4 Anderson, American Law
of Zoning (2d ed), § 28.10, pp 378-379, n 36; 3
Rathkopf & Rathkopf, Law of Zoning & Planning
(4th ed), § 36.01, p 36-1 ("Most courts hold that
since zoning is a legislative function, it is beyond
the judicial power to determine what the restric-

tions applicable to property should be"); § 36.04, p 36-11, n 13.

Such rezoning by the court, has been held to be contrary to the separation of powers. See, e.g., *Longboat Key v Kirstein,* 352 So 2d 924 (Fla App, 1977). In general, "[z]oning is primarily a legislative function, subject to judicial review only to determine 'whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare.' " *Norwood Builders v City of Des Plaines,* 128 Ill App 3d 908, 917; 471 NE2d 634 (1984). The Arkansas Supreme Court observed:

> [T]he Legislature gave the rezoning power to the City Council or legislative body of the City and it is not within the province of the court to rezone property. . . .
> "Courts are not super zoning commissions and have no authority to classify property according to zones."
> . . . Placing the property in a specific zone is beyond the Court's power. [*Little Rock v Breeding,* 619 SW2d 664, 672-673 (Ark, 1981).]

In New York, when ordinances have been found unconstitutional, but not discriminatory per se, "the new zoning [must] be determined not by the court, but by the [zoning authority]." *Stilbell Realty Corp v New York,* 54 AD2d 962, 963; 388 NYS2d 648 (1976).[11]

Even among states that grant to their courts fairly broad declaratory and injunctive power in these cases, there is great reluctance to allow courts to actually zone the property in question, as judges may do under options (i) and (ii) of the

[11] Like the New York Court and others, we would be inclined to distinguish situations involving discriminatory or exclusionary zoning. We do not consider here the proper role of the court in such cases.

*Zaagman* procedure, and as the trial judge and Court of Appeals in this case did by following option (v).

> The courts may not rezone property to specific categories upon a finding of the invalidity of a zoning ordinance. It is not the province of courts to zone or rezone, thereby substituting their judgment for that of the legislative body. [*Bd of Supervisors v Allman,* 215 Va 434, 445; 211 SE2d 48 (1975).]

Although the Ohio Supreme Court agreed with some of our reasoning in *Zaagman,* that court rejected a trial court's ordering of a change in a use classification applicable to the property in question. *Union Oil Co v City of Worthington,* 62 Ohio St 2d 263, 266; 405 NE2d 277 (1980). Although it appeared that the trial court in *Worthington* had "merely deferred to what it believed the city's wishes were[,]" the Ohio Supreme Court

> [n]evertheless . . . believe[d] the trial court exceeded its proper judicial role in zoning matters in ordering the property rezoned to a substitute zoning classification. [*Id.*]

Commentators have also questioned the *Zaagman* rule under the separation of powers doctrine.

> The court's role is to resolve disputes, applying statutes and making new common law where no statutes exist or where the statutes fail to provide for the situation in dispute. Since zoning laws typically establish a statutory procedure for amending zoning maps and allowing for development, it can be argued that the courts should play no role in providing for the orderly and equitable development of communities. The proper role for the courts is to assure that the legislature allows

for development without violating the constitutional rights of property owners or other citizens. The *Zaagman* process would allow the court to usurp the legislative function by ordering legislation even though the court itself has deemed such action inappropriate under the constitution. In addition, the process appears to supercede, or render ineffectual, traditional statutory rezoning procedures. Presumably, the city must follow those procedures when it implements the court's order. If so, the city must notify surrounding property owners and hold the public hearing typically required by zoning enabling acts, even though the outcome has been judicially determined in advance. The court's order thus makes a farce out of the legislatively mandated rezoning hearing. If, however, the court's order exempts the city from the required procedures, the court has even more seriously invaded the legislative sphere by judicially waiving enforcement of a valid statutory requirement. [Prahl, *The rezoning dilemma: What may a court do with an invalid zoning classification?,* 25 SD L R 116, 123-124 (1980).]

See Rohan, Zoning & Land Use Controls, § 52.07(2)(a), pp 52-63, 52-64; Ellmann,[12] *The* Turkish *rhapsody—More dissonance in the zoning game,* 1983 Det C L R 1195, 1200.

Thus, relying on our former pronouncements on this issue, and in recognition of the reasoning of a majority of state jurisdictions as well as of the plain language of Const 1963, art 3, § 2, we hold that the *Zaagman* procedure impermissibly offends the separation of powers. Moreover, we find that the procedure outlined in *Zaagman* should be overruled for pragmatic reasons as well. There is simply no doubt that the procedure has resulted in excessive delay when applied.

This litigation has prevented Mr. Schwartz from

---

[12] The author is also counsel for plaintiffs-appellants in this case.

developing his property for over fifteen years. In the companion case to Zaagman, *Turkish v City of Warren,* it was eight years after rezoning proceedings had been initiated before the plaintiffs could effectively use their land. Ellmann, *supra,* p 1199, n 13.

The *Zaagman* procedure, even as modified by the separate opinion, perpetuates a litigation merry-go-round in zoning cases, providing no effective relief for successful plaintiffs, even while stepping outside the proper judicial role. As Justice Brennan pointed out in dissent in *San Diego Gas & Electric Co v San Diego,* 450 US 621, 655, n 22; 101 S Ct 1287; 67 L Ed 2d 551 (1981), there is always the possibility in these cases that a municipality will "merely amend the regulation and start over again." The *Zaagman* rule, by further lengthening the process of judicial review of a zoning ordinance challenge, does nothing to alleviate this problem, and in effect, adds to it.

Although the dissent's proposed rule of deference to the municipality's proposed alternative use, if reasonable, might enhance the predictability of zoning review, it does not adequately remove the judiciary from the "zoning business." Ultimately, if the municipality's alternative use proposal were untimely or unreasonable, the dissent would continue *Zaagman's* endorsement of the courts as superzoning authorities.

Cutting, as it does, into private property ownership, zoning is an onerous legislative task for those who must withstand the political pressures attendant to its exercise. It is no wonder, then, that in our first post-*Zaagman* experience the defendant municipality and amici curiae are urging us on with even further policy and rulemaking suggestions, little of which could not be provided for in the zoning enabling statute or by individual zoning

authorities.[13] Therefore, our continued intrusion into this troublesome area would feed on itself, thrusting us further into this quagmire.

Even if the practice did not offend the separation of powers, the judiciary's zoning track record is not good. See, generally, Babcock, *The Zoning Game Revisited* (1985). Zoning, by its nature, is most uniquely suited to the exercise of the police power because of the value judgments that must be made regarding aesthetics, economics, transportation, health, safety, and a community's aspirations and values in general. By the same token, zoning, which requires linedrawing that oftentimes "by its nature [is] arbitrary," *Dinolfo, supra,* p 269, is uniquely unsuited to the judicial arena.

Thus, for doctrinal and practical reasons, the procedure that we established in *Zaagman* for providing relief in zoning cases once an ordinance has been found unconstitutional is hereby repudiated and replaced with a rule that better comports with the role of the judiciary and the separation of powers doctrine.

In the next portion of this opinion, we indicate our preference among the options presented in *Zaagman, supra,* pp 168-179, and those culled from other jurisdictions and the relevant literature. Relying somewhat on the experience and suggestions of other courts and commentators, as well as on our own post-*Zaagman* experience, we adopt an approach that does not move the judiciary into the realm of the municipal legislature, yet one that retains the courts' power to grant meaningful relief to successful plaintiffs.

III

It has been noted that "confusion over the

---

[13] Saving clauses in the event of partial constitutional invalidity are a common legislative tool.

proper relief to be awarded in zoning cases has continued at least since the United States Supreme Court's decision in *Nectow v City of Cambridge,* 277 US 183; 48 S Ct 447; 72 L Ed 842 (1928)." *Belkin v City of Birmingham,* 87 Mich App 690, 703; 276 NW2d 465 (1978), modified 406 Mich 949 (1979) (quoting Ellickson, *Suburban growth controls: An economic and legal analysis,* 86 Yale L J 385, 490 [1977]). Ellickson observed that *Nectow* has had several detrimental effects, among them the fact that the case

> has been construed to mean that a landowner's standard remedy against overly restrictive zoning should be some form of injunctive relief and not damages. [Also,] by failing to specify what type of injunctive relief the landowner was to receive, *Nectow* reinforced the judicial tendency toward sloppiness in the specification of remedies in zoning cases. [*Id.*]

Although the Court of Appeals in *Belkin,* p 704, observed that this Court had never "explained under which circumstances the court may depart from the general rule and invoke injunctive restraints against future municipal action[,]" it nevertheless found

> that such a foundation must exist . . . in the traditional power, inherent in courts of equity, to shape the relief granted according to the circumstances of the instant case. [*Id.*]

We agree with the Court of Appeals in *Belkin* that the power of the judiciary should extend far enough in zoning cases to allow courts to shape necessary relief without usurping legislative prerogative. We also feel constrained to select an alternative to the *Zaagman* procedure that is consistent with the *Nectow* approach to the problem.

Although the concept of awarding damages in this type of case is an intriguing one, see *San Diego Gas & Electric Co v San Diego,* 450 US 621; 101 S Ct 1287; 67 L Ed 2d 551 (1981) (Brennan, J., dissenting), we decline the opportunity at this time to fully consider or to endorse that alternative.[14]

[14] Under a compensation proposal, at least where plaintiff's property has been found to have been unconstitutionally "taken," the judge would award damages to the plaintiff for the "temporary taking." See *San Diego Gas & Electric Co v San Diego,* 450 US 621, 636-661; 101 S Ct 1287; 67 L Ed 2d 551 (1981) (dissenting opinion). In 1979, the Court of Appeals held that the ordinance challenged by this plaintiff "is taking from plaintiffs the use of their property without just compensation, contrary to the Federal and State Constitutions." *Schwartz v Flint,* 92 Mich App 495, 503; 285 NW2d 344 (1979). See *Schwartz v Flint (After Remand),* 120 Mich App 449, 451; 329 NW2d 26 (1982). This is not a regulatory case in which the value of plaintiff's land is merely lessened by the application of the regulation.

In *San Diego Gas & Electric, supra,* p 653, Justice Brennan, in dissent, stated:

> In my view, once a court establishes that there was a regulatory "taking," the Constitution demands that the government entity pay just compensation for the periods commencing on the date the regulation first effected the "taking," and ending on the date the government entity chooses to rescind or otherwise amend the regulation.

Justice Brennan's further comments are conceivably applicable here:

> Police power regulations such as zoning ordinances and other land-use restrictions can destroy the use and enjoyment of property in order to promote the public good just as effectively as formal condemnation or physical invasion of property. From the property owner's point of view, it may matter little whether his land is condemned or flooded, or whether it is restricted by regulation to use in its natural state, if the effect in both cases is to deprive him of all beneficial use of it. From the government's point of view, the benefits flowing to the public from preservation of open space through regulation may be equally great as from creating a wildlife refuge through formal condemnation or increasing electricity production . . . . But "the Constitution measures a taking of property not by what a State says, or by what it intends, but by what it does." [*Id.,* pp 652-653.]

The Just Compensation Clause "was designed to bar the government from forcing some individuals to bear burdens which, in all fairness, should be borne by the public as a whole." *Id.,* p 656.

Plaintiffs have not asked for that type of relief;[15]

This reasoning may be analogized to the City of Flint's decision to zone plaintiff's property for large-lot single family residences when there is no demand for such housing. Justice Brennan's opinion seems to say that it is permissible for a municipality to make such a decision *as a matter of policy and land-use planning,* but that it must pay for the privilege to use private land for such public purposes.

Several states have recognized the temporary-takings remedy, although none are directly analogous to *Schwartz.* See *Rippley v City of Lincoln,* 330 NW2d 505 (ND, 1983); *Fifth Ave Corp v Washington Co,* 282 Or 591; 581 P2d 50 (1978); *Scheer v Evesham Twp,* 184 NJ Super 11; 445 A2d 46 (1982); *State v Zinn,* 112 Wis 2d 417; 334 NW2d 67 (1983). These cases are easily distinguished from *Schwartz* in that they involved zoning or regulations that *clearly* had a public purpose. Nonetheless, if the doctrine is accepted in theory, there must be no critical distinction between takings for obviously public purposes and those effected through normal zoning, assuming that a *taking* has been found.

A commonly cited advantage of compensation for temporary takings is the tempering effect it may have on the municipality's future zoning. "The existence of some damages liability may serve to encourage more conscientious application of land use controls." Rathkopf, *supra,* § 46.04, p 46-30. Moreover, unlike some of the other alternatives, it does provide plaintiff with a remedy. The zoning authority is left free to exercise its legislative duties without any kind of intrusion by the courts.

There are a number of disadvantages associated with temporary-takings compensation, the primary one being the financial stress placed on municipal budgets. See Badler, *Municipal zoning liability in damages—A new cause of action,* 5 Urban Lawyer 25, 54 (1973); Bricklemyer, *Regulatory takings—Call the question,* 60 Fla B J 77, 80 (1986) (citing similar arguments against compensation: "the potential strain on the public coffers and the chilling effect on innovative land use planning").

We do not attempt to balance the advantages and disadvantages of the "temporary takings" alternative here, as the approach is a novel one and not one even mentioned by the parties or amici curiae in this case. There have also been a number of "glosses" on the rule proposed in the literature. See, e.g., Rathkopf, *supra,* p 46-33. Consideration of the whole picture would thus require full briefing and argument in another case.

[15] The plaintiff-appellant in the instant case does not argue for temporary damages. Rather, he seems to allude only to inverse condemnation:

> If Defendants advise this Court that they are unwilling to abide by this result, the City of Flint should be directed immediately to perfect its condemnation of Plaintiffs' land and to pay Plaintiffs just and reasonable compensation for the deprivation of their property and its economic use from the date of the original complaint.

nor would it be an appropriate way to terminate this particular litigation, given its history.

Thus, in selecting an alternative to *Zaagman,* we seek to provide appropriate injunctive relief in an efficient, expedient manner without injecting courts into the legislative realm. After careful consideration of the many alternative avenues of relief proposed by the parties and amici curiae or employed by foreign jurisdictions, we conclude that the approach adopted by our sister state, Illinois, meets these criteria, and we therefore adopt it. Before describing that approach, however, we will briefly review the rejected options.

### A

The State Bar amici curiae advocate overruling *Zaagman;* however, their joint proposal nevertheless would vest the trial court with overly broad powers, ignoring one of the major problems of *Zaagman.* The proposal, as enunciated by the Real Property Law Section, would allow the court to

> decree such relief as permits reasonable use of the land, does not have substantial adverse effect on the public health, safety or welfare, and otherwise comports with the dictates of equity.

The dispute between the two State Bar sections over an amendment to the proposal, offered by the Public Corporation Section, best highlights the weaknesses of the joint proposal. The Public Corporation Law Section adds a gloss to the proposal in an effort to recognize the "legislative prerogatives of local government." It recommends that

[t]he final judgment shall provide that the munici-

---

"Temporary takings" damages are a much less extreme remedy than inverse condemnation.

pality may exercise its zoning authority over the land described in the judgment, but any ordinance, amendment or regulation shall not preclude the use determined by the Court to be reasonable.

The Real Property Section maintains that this additional proposal is "unwise and unnecessary." Tellingly, this section's objection to the gloss observes that the additional proposal

could . . . caus[e] delay and put[ ] the landowner and municipality back into the same problem area which has been created by Zaagman, *i.e., by giving the municipality an opportunity to re-legislate.* [Emphasis added.]

The Public Corporation Section responds that the joint proposal (without the amendment) is "close to legislating by the Court."

We find that both versions of the proposal are flawed. A court has no power either to give or to take away a municipality's authority to legislate or relegislate; nor may it legislate in lieu of the municipality. Such is the essence of the separation of powers.

The Real Property Section claims that the process of zoning legislatively is too long and burdensome, but the same reasoning may support the argument that a court has inadequate resources and is an inappropriate forum for performing the "several levels of consideration," noted by the amicus curiae, that are necessary to zoning determinations. Thus, we find the State Bar proposals to be inadequate substitutes for the *Zaagman* procedure. While we agree that *Zaagman* should be overruled, the joint proposal does little to correct the basic infirmities of that decision. The additional proposal neither corrects the separation of powers problem nor does it provide a procedure

that will ultimately be any less burdensome, from the successful plaintiff's perspective, than *Zaagman*.

We also reject the defendant's proposal for similar reasons. The city advocates revision of the *Zaagman* procedure so as to disallow a court's actual rezoning of a parcel of land, but it defends the court's power to "determin[e] which of the lesser restrictive zoning classifications that are already impliedly contained within the classification declared unconstitutional can be constitutionally applied to this property." The city, of course, retains its right to rezone the property later if the court's "rezoning" ends up permitting inappropriate uses of the property.

This alternative was not considered in the *Zaagman* decision. See *Zaagman,* p 165.[16] This alternative is like *Zaagman,* though, in that it allows the court to grant relief in the form of a whole *classification,* rather than a specific proposed use. By so doing, a court would be violating rules that require zoning regulations to be enacted according to zoning enabling acts.

A separation of powers problem is most apparent where the court is granting a classification, rather than a use, whether that classification is one proposed by the plaintiff or already "included" within the invalidated classification.[17] Moreover,

[16] The Florida courts apparently follow a variation of the "most restrictive lesser included" approach. Although Florida courts do not allow a court to rezone directly, they permit courts to direct the zoning authority to rezone to a less restrictive classification. See, e.g., *Clearwater v Curls,* 366 So 2d 1238 (Fla App, 1979).

[17] The defendant's proposal appears to assume a Euclidean, or pyramidal, approach to zoning. The State Bar Real Property Section noted:

Not only is this approach not universally followed, but modern planning philosophy generally discredits the approach.

implementation of this proposal could result in the implicit approval of all types of uses of the property not even described or presented to the judge during the course of litigation. Thus, we reject the city's proposal as one that contains all of the problems of *Zaagman,* while presenting new ones of its own.

A sibling to the "most restrictive included" approach is the relief granted in *Long v Highland Park,* 329 Mich 146; 45 NW2d 10 (1950). In *Long,* this Court approved of the trial court's invalidation of an unconstitutional zoning ordinance and also of the trial court's conclusion

> that said property might be used for any of the purposes allowed by the ordinance under the classification B2, for business purposes. [*Id.,* p 154.][18]

*Zaagman,* itself, rejected the *Long* approach as "too expansive," noting that it allows the landowner to develop the land in any manner that falls within the approved zoning classification. *Id.,* p 172. Prahl, *supra,* p 119, notes that this alternative provides

> no predictability for surrounding property owners and no requirement that the community's plan be considered.

A majority of state courts also appear to reject this alternative as violative of the separation of

---

Our impression of current trends in land use planning supports this statement.

[18] It is unclear whether this B2 classification was one proposed or sought by the plaintiffs in *Long.* It has been so characterized, however. See *Daraban, supra,* p 506 (dissent). ("*Long* [and subsequent cases] have apparently come to stand as authority for the issuance of injunctions which can restrain municipalities from zoning the property involved in a manner different from that sought by the plaintiff.")

powers. See Anderson, *supra,* § 28.10, pp 270-277 (August, 1985, supp) and cases cited.

We object to adoption of this alternative for the same reason. By designating a classification, or requiring the municipality to adopt a particular classification, the court is clearly sitting as a superlegislature. This approach grants plaintiffs far more relief than they normally request and allows a successful plaintiff to change its proposed use to a potentially more disruptive use, although one that is within the approved classification.[19]

An alternative that falls at the other end of the spectrum from *Long* is that advocated by Justice KAVANAGH in dissent in *Daraban, supra.* Dubbed the "unzoned" approach, this proposal provides that once the court has declared an ordinance unconstitutional, the property is left unzoned, and the municipality must act to rezone if it wishes to prevent plaintiff's intended use. If plaintiff's use is precluded by a new ordinance, then, presumably, he must begin the process all over again.

Most courts and commentators find the unzoned approach undesirable; however, some states have adopted it. See *City of Cherokee v Tatro,* 636 P2d 337 (Okla, 1981); *Atlanta v McLennan,* 237 Ga 25; 226 SE2d 732 (1976).[20]

---

[19] There is a factual scenario in which the court's implicit designation of a different zoning classification is more palatable. In *Harris Trust & Savings Bank v Duggan,* 105 Ill App 3d 839; 435 NE2d 130 (1982), the trial court had invalidated an amendatory ordinance. The court noted that the invalidation of the amendment did not cause the property to be unzoned, but rather, effected a "reversion" to the preamendment classification. It held that the

> declaration does not, therefore, constitute judicial rezoning but rather a statement of the necessary consequences of the court's having declared the zoning amendment invalid. [*Id.,* p 847.]

[20] Georgia has adopted a variation of the unzoned approach. When an ordinance is declared unconstitutional, the court must first remand the case to the zoning authority. If the board fails to act within

Plaintiffs in this case argue in favor of the unzoned approach in theory, but, of course, they insist upon their right to use the property as they have proposed. They note:

Of course, invalidation of a zoning ordinance which offends the State or Federal Constitution means that the Plaintiff's property is "unzoned." . . . There is no presumption that land is to be burdened with restrictions even if they are invalid or not yet in being.

Courts that reject the unzoned approach do so for reasons similar to those articulated in *Zaagman.* We continue to endorse that view. While it is theoretically appealing, the unzoned approach ignores the court's power to grant relief tailored to the equities of the situation.

*Zaagman* noted in regard to the unzoned alternative:

Although a technically logical position, we are of the opinion that restricting the Court's declaratory powers in such an absolute manner may operate to produce a result neither generally prayed nor argued for by an aggrieved landowner and potentially incompatible with the orderly development of the general community or abutting parcels of property. [*Id.,* p 168.]

The Ohio Supreme Court, in *Worthington, supra,* p 266, noted its agreement with *Zaagman* on this point. It opined that to leave the property in an unzoned condition would "afford the property

the time allotted, then the trial court may declare the property free of all zoning. *Atlanta v McLennan,* 237 Ga 25; 226 SE2d 732 (1976). In order to avoid a declaration of unzoned status, however, under which the neighboring residential property owners would suffer, the Georgia Supreme Court, in at least one case, allowed the county a second chance to rezone before going the unzoned route. See *DeKalb Co v Flynn,* 243 Ga 679; 256 SE2d 362 (1979).

owner complete freedom of choice as to the future use of his property."

The Illinois Supreme Court also found two problems with the unzoned approach. As to the defendant municipality, the court noted that it might

> rezone the property to another use classification that still excludes the one proposed, thus making further litigation necessary as to the validity of the new classification. [*Sinclair Pipe Line Co v Richton Park,* 19 Ill 2d 370, 378; 167 NE2d 406 (1960).]

*Sinclair* also noted the possibility that the property owner would not be constrained to implement the use proposed during the course of litigation and that "he might thereafter use the property for an entirely different purpose." *Id.,* pp 378-379.[21]

---

[21] The Supreme Court of Virginia also described a worst-case scenario under the unzoned alternative.

> [E]ntry of a simple adjudicatory decree granting no definitive relief would work a legal absurdity; the governing body might be left with an island of unzoned land, and the landowners might be left free to put their land to any use, short of a nuisance, they saw fit. Left in that posture, the governing body would be constrained to act hurriedly to zone the unzoned island to a new category. In the rush, and absent definitive guidelines from the court, it might select a category that would not allow the one use shown by the record to be reasonable. In such case, new litigation would ensue. If the new court decree declared the new category unreasonable but again granted no definitive relief, the process of re-zoning and re-litigation could continue *ad infinitum.* [*City of Richmond v Randall,* 215 Va 506, 512; 211 SE2d 56 (1975).]

We would note that while there may be no real danger of the average plaintiff constructing a slaughterhouse or incinerator on his property, the concern over municipal foot-dragging is real. As the city attorney quoted in footnote 22 of *San Diego Gas & Electric, supra,* p 655, advised:

> "If all else fails, merely amend the regulation and start over again. . . . One of the extra 'goodies' contained in [a recent California case] appears to allow the City to change the regula-

Thus, even courts that articulate separation of powers concerns are hesitant to adopt a pure unzoned approach. Commentators are equally unenthusiastic about leaving property unzoned after a declaration of unconstitutionality invalidates an existing zoning ordinance.[22]

In our view, the only way that an unzoned approach could be workable would be if it were combined either with a proscription against any future zoning of the property, like the Georgia rule,[23] or with a compensation scheme, whereby the successful plaintiff would be awarded damages for the "temporary taking" of his property. The Georgia rule embodies a major separation of powers problem; it also opens the door to totally unregulated land use. The compensation alternative, as noted above, is appealing, but its consideration must await future briefing and argument in a more appropriate case.

Having rejected variations on the two extreme forms of relief, we now turn to the middle ground. We have chosen to adopt an alternative that confines the trial court to its more traditional role, but that allows some latitude in granting appropriate relief to a plaintiff who has successfully challenged an unconstitutional zoning ordinance. Illinois has also adopted such an approach.

---

tion in question, even after trial and judgment, make it more reasonable, more restrictive, or whatever, and everybody starts over again.

\*  \*  \*

"See how easy it is to be a City Attorney. Sometimes you can lose the battle and still win the war. Good luck."

[22] Ellickson, *supra,* p 491, describes the judicial merry-go-round that is created when municipalities rezone in an equivalently stringent, though different, manner. Prahl, *supra,* p 119, agrees with our assessment that most courts find the unzoned alternative unacceptable.

[23] See n 20.

B

By borrowing the Illinois approach, we are essentially hearkening back to earlier pre-*Zaagman* precedent. The *Sinclair* rule is very similar to, but narrower than, that employed by this Court in *Daraban, supra.* See *Zaagman, supra,* pp 173-174, and n 10.

In *Daraban, supra,* p 500, we approved a trial court order that had enjoined the defendant municipality from interfering with the plaintiff's use of the land "in accordance with plaintiff's exhibit number 4, . . . and in accordance with the R-3 zoning classification . . . ." Thus *Daraban* allowed the court to declare the plaintiff's *use* permissible as well as to approve a specific use classification. This latter type of relief had already been approved in *Long, supra,* and we reject it for the reasons noted above.

We approve of the *Daraban* approach only insofar as it allows a court to enjoin the municipality from interfering with a plaintiff's proposed use. We would also add an important gloss to this limited version of the *Daraban* rule: The plaintiff's use must be shown to be a reasonable one, and the plaintiff must bear the burden of so proving by a preponderance of the evidence.

This "specific use" approach is endorsed by a number of jurisdictions and has the benefit of providing a successful plaintiff with some tangible relief. In addition, the task to be performed by the judge in awarding this type of relief is not unlike the findings that must be made initially in order to find a particular zoning ordinance unconstitutional as applied.[24]

Ohio is one of the states that has adopted a variation of this approach. In *Worthington, supra,*

---

[24] Again, the analysis is confined to situations in which the court

p 267, the court held that once an existing zoning ordinance is found unconstitutional

> the trial court should give notice to the zoning authority that, within a reasonable time certain, it may, at its option, rezone the property. Further notice should be given that, if the property is not rezoned within such period of time, *the court will authorize the property owner to proceed with the proposed use if, on the basis of the evidence before it, the court determines the proposed use to be reasonable.* [Emphasis added.]

The Ohio courts may enjoin the landowner from disturbing the status quo during the interim, and may later conduct further proceedings "to determine whether the new zoning restrictions may constitutionally proscribe the owner's proposed use." *Id.*

The Virginia rule is similar.

> [W]hen the evidence shows that the existing zoning ordinance is invalid and the requested use reasonable, and when, as here, the legislative body produces no evidence that an alternative reasonable use exists, then no legislative options exist and a court decree enjoining the legislative body from taking any action which would disallow the one use shown to be reasonable is not judicial usurpation of the legislative prerogative. [*City of Richmond v Randall,* 215 Va 506, 513; 211 SE2d 56 (1975).]

See *Bd of Supervisors v Allman, supra,* pp 445-446.

We prefer the Illinois approach because of its specificity and its elimination of delay. It combines the two types of action (declaration of unconstitutionality and relief) into one proceeding. By plac-

---

has found a particular ordinance to be unconstitutionally *applied.* Exclusionary zoning is an entirely different type of determination, necessitating potentially broader relief.

ing the burden of proof of reasonableness on the plaintiff, some degree of compromise and potential settlement is undoubtedly encouraged.

The rule originated in *Sinclair Pipe Line Co v Richton Park, supra.* The *Sinclair* court noted first:

> The problem thus presented as to the kind of relief to be awarded in a zoning case is a recurrent one, and one toward which this court has not manifested an unwavering attitude. [*Id.,* p 377.]

The same may be said of our own precedent on this point.

In developing the "specific reasonable use" relief rule, the Illinois court sought to avoid leaving property unzoned after a declaration of unconstitutionality. It observed that

> [i]n most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use. [*Id.,* p 379.][25]

The court opined that by granting the plaintiff's proposed use, further litigation can be avoided, but the plaintiff is also prevented from proceeding with a different, possibly more disruptive, use (as might be the case if the property is left unzoned or a whole classification is approved).

The Illinois courts have firmly limited the type of relief available to a court when an ordinance has been declared invalid. The court must not

---

[25] Plaintiff-appellant in this case makes a similar argument. He notes:

> Property owners do not attack zoning ordinances for the abstract satisfaction of proving a municipality to have exceeded its authority; they seek to develop their property in a particular way for a specific class of uses as specified in the ordinance.

assume[ ] the legislative function of determining
the ultimate zoning classification of the property
in question. . . . The most that a court may do
after declaring an existing zoning ordinance void
as applied to certain property is to find that the
specific use contemplated by the owner is reason-
able and may be permitted. [*Fiore v Highland
Park*, 76 Ill App 2d 62, 76; 221 NE2d 323 (1966).]

See *Exchange Nat'l Bank v Waukegan*, 85 Ill App
2d 461, 466-467; 229 NE2d 562 (1967) (reversed
trial court's decree that divided the property for
zoning purposes).

On the other hand, if the plaintiff does not show
reasonableness by a preponderance of the evi-
dence, the zoning authority is free to rezone the
property, unrestrained by a use that has been
declared reasonable. The court generally looks to
the existing uses and zoning of nearby properties
in determining reasonableness. Presumably, the
defendant and any intervening parties will submit
evidence on this point.

The reasonableness burden should, in our view,
be appropriately high, so that a plaintiff who has
successfully challenged an unconstitutional ordi-
nance will not automatically be free to proceed
with its proposed use. See, e.g., *Drogos v Bensen-
ville*, 100 Ill App 3d 48, 56; 426 NE2d 1276 (1981),
where the Illinois Court of Appeals affirmed the
finding of invalidity, but found the plaintiff's pro-
posed gas station to be an unreasonable use. See
also *LaSalle Nat'l Bank v Chicago*, 130 Ill App 2d
457, 462; 264 NE2d 799 (1970) (remand for submis-
sion of further evidence regarding reasonableness
of use). A plaintiff's proposed use must be specific,
but it need not amount to a "plan." See *Norwood
Builders v City of Des Plaines, supra.*

Under the Illinois rule, the zoning authority is
always left free to rezone. When a plaintiff meets

the burden of proving the reasonableness of his proposed use, the zoning authority is simply prevented from prohibiting the approved use when it acts to rezone the property. Other Illinois cases decided under this rule are discussed in *Zaagman,* pp 174-176, n 10.

*Zaagman* rejected the Illinois approach along with *Daraban;* however, it found *Sinclair* and its progeny "persuasive." *Id. Zaagman* described *Sinclair* and *Daraban* as "too restrictive."

It goes without saying that we disagree on this point. In our view, *Sinclair* represents a unique accommodation of both the desire to provide relief and the necessity for keeping judicial action within constitutional bounds.

After a zoning ordinance has been declared unconstitutional, in addition to that declaration, a judge may provide relief in the form of a declaration that the plaintiff's proposed use is reasonable, assuming the plaintiff's burden has been met, and an injunction preventing the defendant from interfering with that use. The defendant is always free to rezone consistent with the limiting conditions of plaintiff's proposed use, or not so limited, where plaintiff's use has not been declared reasonable. In contrast to *Daraban,* the Illinois rule prevents the plaintiff from "shooting the moon" with its proposed use, because if the plaintiff does not demonstrate reasonableness, the municipality's further zoning will be limited only by the court's declaration of unconstitutionality.

It is a practical rule, because, as the *Sinclair* court observed:

> Normally the land owner is interested particularly in a specific use which he proposes, and so it is natural that he will try the case and the judge will reach his decision in terms of the reasonableness of excluding that specific use. [*Id.,* p 378.]

The finality aspect of the Illinois rule is also appealing. In contrast to a purely unzoned approach, it does not set the stage for future litigation.

We would prefer to terminate this litigation now, rather than extend it further. However, in the interests of rectifying a rule that has proved to be cumbersome and unworkable, and of providing a more manageable, efficient, and less theoretically problematic alternative approach, we find it necessary to remand this cause yet again in order to allow for a determination of reasonableness by the trial court. Since plaintiff still seeks to develop his property as he proposed in his original complaint, this would not prove to be a difficult task, although further evidence from all sides might be received on the question of reasonable use.

Thus, we overrule *Zaagman* and reverse and remand this case to the trial court for consideration of the question of relief in accordance with this opinion.

CAVANAGH, BOYLE, and RILEY, JJ., concurred with BRICKLEY, J.

LEVIN, J. In this appeal we are called upon (1) to reexamine the procedure, applicable after a judicial determination that a zoning classification is invalid as applied to a particular parcel of land, prescribed by this Court in *Ed Zaagman, Inc v Kentwood,* 406 Mich 137, 166-167; 277 NW2d 475 (1979), and (2) to determine whether the declaratory judgment and order, entered pursuant to the *Zaagman* procedure by the circuit judge, as modified and affirmed by the Court of Appeals, constitutes an improper exercise by the judiciary of

power vested in the Legislature,[1] a deprivation of property without due process of law,[2] or a taking of private property without just compensation.[3]

I

Joseph Schwartz owns a twenty-eight acre parcel of undeveloped land in the City of Flint. Immediately south of the parcel are several subdivided residential lots containing single-family homes on the north side of Woodslea Drive, which runs roughly east and west. These homes are on the northern edge of a large residential neighborhood.

The judge ultimately declared the zoning classification to be constitutional as applied to the Schwartz parcel. The Court of Appeals, one judge dissenting, reversed and held the zoning classification unconstitutional as applied to the Schwartz parcel.[4]

Pursuant to the procedure set forth in *Zaagman*,[5] the Court of Appeals remanded the cause to the Flint City Council. The city, however, failed to submit an amendatory ordinance or other proposal to the circuit court within the sixty-day period prescribed in *Zaagman*.[6]

Consistent with paragraph (v) of the *Zaagman* procedure,[7] the judge received proposals from both parties and conducted an evidentiary hearing for the purpose of determining "the most equitable or

[1] Const 1963, art 3, § 2.

[2] Const 1963, art 1, § 17. Similarly, see US Const, Am XIV.

[3] Const 1963, art 10, § 2. Similarly, see US Const, Am V, applicable to the states under US Const, Am XIV; *Chicago, B & Q R Co v Chicago,* 166 US 226; 17 S Ct 581; 41 L Ed 979 (1897).

[4] *Schwartz v City of Flint,* 92 Mich App 495; 285 NW2d 344 (1979), lv den 408 Mich 905 (1980).

[5] See *ante,* pp 301-302, n 3.

[6] The judge denied the city's motion to extend the sixty-day period.

[7] See *ante,* pp 301-302, n 3.

'midsatisfactory use' to be made" of the Schwartz parcel.

The order[8] entered by the judge did not adopt either the city's or Schwartz' proposal. The order prescribed different uses for various "tiers" of the Schwartz parcel. The first tier, consisting of approximately 3.7 acres immediately north of the single-family homes on Woodslea Drive, was restricted to single-family homes under the A-1 zoning classification (10,000 square foot minimum lots). The second tier, consisting of approximately 1.15 acres immediately north of the first tier, was restricted to "duplexes." On the remaining property, Schwartz would be permitted to construct 120 or, depending on the flood plain level, 124 single-family attached townhouse units, provided that the total number of units on the entire parcel did not exceed 140.

The order also prohibited the use of the outlot[9] as a means of access to and from the Schwartz parcel, and would require that Schwartz obtain a right-of-way over an adjoining privately owned parcel.

The Court of Appeals[10] modified the judge's order to permit "detached single-family townhouses" as well as "duplexes" in the second tier of the parcel;[11] the judge's order was affirmed in all other respects.

II

Schwartz, the city, and two sections of the State

---

[8] See *ante,* pp 303-304, n 8.

[9] Schwartz owns an undeveloped outlot, sixty feet in width, on the north side of Woodslea Drive. This outlot has been, and still is, the only means of providing public access to the larger parcel.

[10] *Schwartz v City of Flint (After Remand),* 120 Mich App 449; 329 NW2d 26 (1982).

[11] The city did not seek to file a cross-appeal from the Court of Appeals modification of the circuit judge's order.

Bar of Michigan, appearing as amici curiae, urge that the remand procedure set forth in *Zaagman*[12] should be repudiated or modified.

### A

Schwartz asserts that the *Zaagman* procedure should be repudiated in its entirety and overruled. He argues that delay and prolonged litigation are invited by the procedure, which gives local zoning authorities at least a second chance after a classification has been determined invalid as applied. He also argues that the search for a "midsatisfactory use" in effect requires a landowner to "bargain against himself" after a successful challenge to a zoning restriction. He further asserts that the procedure improperly leads courts to "devise and impose restrictions on land use" that may threaten sound economic development and perhaps even constitute a "taking" by inverse condemnation.[13]

Schwartz argues that when a zoning restriction is declared unconstitutional as applied to a parcel of land, the parcel should be deemed "unzoned,"[14] and the landowner should be free to develop the property in a manner consistent with the classification originally sought in the complaint for relief, or the municipality should be ordered to pay just compensation for the "taking" of the property.

The city argues that the *Zaagman* procedure,

---

[12] See *ante,* pp 301-302, n 3.

[13] Schwartz states that the *Zaagman* procedure might give rise to liability, under 42 USC 1983, for deprivation "under color of law" of constitutional rights. Schwartz has not, however, asked for relief under § 1983.

[14] See, e.g., *First National Bank v Lake Co,* 7 Ill 2d 213; 130 NE2d 267 (1955); *Napierkowski v Gloucester Twp,* 29 NJ 481; 150 A2d 481 (1959); *Atlanta v McLennan,* 237 Ga 25; 226 SE2d 732 (1976).

which requires the judge to "determine and implement the most equitable or 'midsatisfactory use' to be made of plaintiffs' parcel," leads courts improperly to exercise legislative powers delegated to municipal zoning authorities. The solution, according to the city, is to require that the judge determine "the most restrictive, yet constitutional, lesser-included zoning classification within the classification determined unconstitutional." The city urges that the *Zaagman* procedure be replaced with a modified version of the proposal submitted by amici curiae,[15] limiting the judge's choice of remedies to a declaration and injunction based on existing zoning classifications.

Alternatively, the city urges that if the *Zaagman* procedure is retained, the sixty-day remand period should be lengthened, and the term "midsatisfactory use" should be redefined to avoid any implication that a compromise, or "middle use," must be implemented in every case.

The Real Property Law and Public Corporation Law Sections of the State Bar of Michigan, as amici curiae, have jointly submitted a proposal that would replace the *Zaagman* remand procedure. The Real Property Law Section argues that the *Zaagman* procedure invites costly delay and provides no incentive to the local zoning authorities to "zone reasonably in the first instance" or reach a settlement with the landowner. The Public Corporation Law Section argues that the *Zaagman* procedure forces both parties to prepare for further litigation, creating an atmosphere not conducive to productive land use planning.

The joint proposal of the State Bar Sections would eliminate the remand procedure and require that a judge fashion an appropriate remedy after it has been determined that a zoning ordi-

---

[15] See n 16.

nance is invalid as applied; the proposal identifies factors that the judge should consider when fashioning a remedy, and the forms of relief that might be granted.[16]

---

[16].1 After a Trial Court has determined a provision of a zoning ordinance is invalid, the Court shall fashion a remedy consistent with this Rule.

.2 Without delay, the Court shall then hold a conference with counsel for all parties to determine the procedure to be followed in fashioning the remedy which may include any of the following:

(1) The filing of Briefs and oral argument on the question of remedy, without any further testimony or evidence, based on the trial record.

(2) The taking of additional testimony and evidence on the question of remedy.

(3) Any other procedure the Court deems appropriate.

.3 In fashioning a remedy, the Court shall consider at least the following factors:

(1) The objectives of zoning as set forth in the applicable Zoning Enabling Act.

(2) A reasonable use or uses of the land, including economic considerations.

(3) The compatibility with, and the effect of any use allowed by the Court on surrounding properties, and the zoning plan as contained in the zoning ordinance.

.4 In determining the remedy, the Court shall make findings as required by [MCR 2.517(A)] in respect to the factors to be considered in .3 above.

.5 The remedy fashioned by the Court may include:

(1) A use or uses which shall be allowed on the land.

(2) Elimination of unreasonable or inappropriate zoning regulations or restrictions.

(3) Conditions on the use of the land.

(4) Appropriate injunctions and other orders as may be deemed necessary to effectuate the remedy.

.6 The remedy fashioned by the Court shall be included in the final Judgment.

The Public Corporation Law Section argues in its brief that the following should be added:

.7 The final judgment shall provide that the municipality may exercise its zoning authority over the land described in the judgment, but any ordinance, amendment or regulation shall not preclude the use determined by the Court to be reasonable.

B

We are not persuaded that the *Zaagman* procedure should be repudiated or overruled in its entirety. Legitimate concerns regarding that procedure, however, prompt us to modify and clarify certain aspects of the procedure.

All the parties have expressed concern that focusing on "midsatisfactory use" may imply that there is in all cases an appropriate compromise or "middle use" that must be reflected in the order of relief from an invalid zoning ordinance.

We see no need to attempt to assess whether the term "midsatisfactory use" is confusing or misleading. We disavow any implication that the term "midsatisfactory use" means that both the landowner's proposed use and a modified version of the original zoning classification must be rejected in all cases.[17] In some cases the landowner's proposed use will be the only constitutionally reasonable use of the property; in other cases the original zoning classification, with modifications, might present the landowner with a reasonable use of his property. The judge is not foreclosed from consideration of these uses in his determination of an appropriate remedy.

[17] Nor does it appear that the author of the opinion that introduced the term "midsatisfactory use" intended that it would be so construed. In his separate opinion in *Dequindre Development Co v Warren Charter Twp,* 359 Mich 634, 642; 103 NW2d 600 (1960), Justice BLACK observed that "there need be no inexorable choice, now at least, between plaintiff's prayer for specific relief and defendants' too-restrictive ordinance" and suggested that the plaintiff and the city might jointly consider "some possibly midsatisfactory use." There was no suggestion that such a "midsatisfactory use" is present in all factual circumstances or that the judge must in every case stay his order of relief until such a use has been considered. See *Daraban v Redford Twp,* 383 Mich 497; 176 NW2d 598 (1970), written by Justice BLACK, affirming an order enjoining interference with the plaintiff's proposed specific use.

C

We adhere to the view that, when a zoning restriction is declared unconstitutional as applied to a parcel of land, the parcel should not be considered "unzoned." The effect of leaving a parcel temporarily unrestricted, and preventing the judge from entering appropriate declaratory or injunctive relief, might be development of the parcel in a manner incompatible with the general development of the surrounding area.[18]

The city should be provided an opportunity to demonstrate the feasibility of uses other than those proposed in the landowner's complaint. A determination that an existing zoning restriction is unconstitutional as applied does not mean that the landowner must be permitted to use the land in the manner he has proposed.

Nor should the judge's choice of remedies be limited to issuance of a general injunction based on a determination of the most restrictive, yet constitutional, "lesser-included" zoning classification within the classification previously invalidated. Adoption of the city's proposal would introduce another area of controversy concerning what constitutes the "most restrictive" zoning classification and unnecessarily constrict the city's and the judge's alternatives.[19]

If there is more than one constitutionally reasonable use of the property, the city's choice should, we continue to believe, generally prevail.

[18] See *Ed Zaagman, Inc v City of Kentwood, supra,* pp 168-169, and n 6; *Sinclair Pipe Line v Village of Richton Park,* 19 Ill 2d 370, 378-379; 167 NE2d 406 (1960). See also 4 Anderson, American Law of Zoning (2d ed), § 28.10, p 378; 3 Rathkopf & Rathkopf, Law of Zoning and Planning (4th ed), § 36.04, p 36-6.

[19] Nor, given the movement away from the pyramidal, *Euclidean* approach to zoning, would it even be possible in many cases to identify a constitutionally reasonable "lesser-included" classification.

If, however, the city fails to identify its choice—through a specific use proposal for the property—within a reasonable period of time, then the judge properly is called upon to determine and implement an appropriate remedy without being limited to, although he should consider, existing zoning classifications and untimely proposals submitted by the city.

D

Specifically, we would hold that, as before, after a judicial determination that a zoning classification is unconstitutional as applied, enforcement of the ordinance should be enjoined and an alternative specific use proposal submitted by the city would be considered by the judge.

In lieu of the remand procedure, not later than sixty days *before* the trial date, the city might present an alternative specific use proposal for the property. The judge could require the landowner to submit an alternative use proposal within the same time limitation.

If the city's presentation is timely, the judge would, upon a determination of unconstitutionality, expeditiously determine whether the city's proposal provides the landowner with a feasible alternative use that is not unreasonable as applied to his property.[20] If the judge determines that a feasible alternative use has been provided by the city, he would be obliged to enter a judgment declaring that to be the use that may be made of the property.

If the judge determines that no feasible alternative use has been provided, or that the city's

---

[20] The substantive standard to be applied in judging the validity of the specific use proposal is the same standard applied in deciding the validity of the original zoning classification.

presentation was made in bad faith or for the purpose of delay, or if the city fails timely to submit a specific use proposal, the judge would conduct an evidentiary hearing to determine an appropriate remedy. Both parties could submit specific use proposals to the judge, but a feasible use proposed by the city would not then be given priority over other feasible alternative uses.

After conducting the evidentiary hearing, the judge, considering at least (1) the objectives set forth in the applicable zoning enabling act, (2) reasonable uses of the land, including economic considerations, (3) compatibility with surrounding properties and developments, and (4) the zoning plan contained in the zoning ordinance, would fashion a remedy that identifies a feasible specific use or uses to be permitted on the land, eliminates unreasonable or inappropriate zoning land use restrictions, and which might include conditions on the use of the land and appropriate injunctions and other provisions and orders as might be deemed necessary to effectuate the remedy.[21] Findings of fact would be required to be filed.

E

The foregoing modification of the *Zaagman* procedure would reduce delay and the length of litigation. While, as before, the city would be given a "second chance" to provide a feasible alternative use for the property, the modified procedure would provide the city with an incentive to act reasonably and without delay. Under the modified procedure the city need not formally adopt an amendatory ordinance, and might instead submit a specific use proposal. The city's choice among feasible

---

[21] This language substantially tracks the joint proposal submitted by amici curiae. See n 16.

alternatives would lose its preferred status if the city acts in bad faith or for the purpose of delay, or if it fails timely to submit a feasible alternative use proposal.

The city would be required to submit a specific use proposal, if at all, sufficiently in advance of the trial date so that if the judge determines that the challenged zoning is unconstitutional, he might, and the parties could reasonably be expected to, proceed, without rescheduling the case and the attendant further delay, immediately to consider the feasibility of the city's alternate specific use proposal. The city should be authorized to file the alternative specific use proposal with opposing counsel rather than the judge so that the judge need not know before he determines the constitutionality of the challenged zoning whether the city has made an alternative specific use proposal and, if so, the nature of the proposal.

Adoption of the modified procedure would eliminate "bargaining against himself" by the landowner or the city. Any implication that a remedy must include a compromise "midsatisfactory" use has been disavowed; the landowner might argue that his originally proposed use is the most, or perhaps the only, reasonable use of the property.

A judgment entered by a trial court is not final until it contains a remedial order. As in all cases, however, a party may file an application for leave to appeal in the Court of Appeals from a judgment or order of the court "which is not a final judgment appealable of right."[22]

The foregoing procedure would not permit a court to exercise legislative power delegated to local zoning authorities. It is only *after* a court finds that local authorities have failed timely to provide a feasible alternative to an unconstitu-

[22] MCR 7.203(B)(1).

tional application of a zoning ordinance that the court would be called upon to formulate a remedy for the unconstitutional deprivation of property rights. Nor would this procedure preclude the city from rezoning the property; existing zoning and such a rezoning would not, however, bar or impede construction and use of the parcel pursuant to the judgment and order of the court.

### III

We turn to consideration of the declaratory judgment and order entered by the circuit judge.[23]

### A

We review the judgment and order of the judge, as modified and affirmed by the Court of Appeals, pursuant to the clearly erroneous standard.[24] Under that standard, the findings of the judge may be set aside when " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "[25]

### B

Schwartz asserts that the judgment and order constitute an impermissible exercise of legislative power, a deprivation of property without due process of law, and a taking of private property without just compensation.

### 1

We have indicated that the *Zaagman* procedure,

[23] See *ante,* pp 303-304, n 8.

[24] See MCR 2.613(C); *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985).

[25] *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

as we would modify that procedure in this opinion, does not permit a court to exercise legislative power delegated to local zoning authorities.[26]

In the instant case, the city failed to submit an amendatory ordinance or other proposal to the judge within the time provided. The judge conducted an evidentiary hearing, receiving testimony and proposals from both parties concerning an appropriate use of the Schwartz property.

In formulating a remedy after a determination that a zoning classification was unconstitutional as applied, and after the local zoning authorities failed timely to provide a feasible alternative use for Schwartz' property, the judge did not impermissibly exercise powers belonging to the legislative branch.

2

Schwartz presents several arguments in support of his claim that the judgment and order deprive him of property without due process of law.

First, Schwartz argues that the decision to permit an A-1 restriction (single family home with a minimum lot size of 10,000 square feet) on part of the property repudiated the "law of the case," insofar as the Court of Appeals originally held that the A-1 classification precludes the use of the property "for any purpose to which it is reasonably adapted."[27] We do not read the first decision of the Court of Appeals as barring the judge on remand from designating a *portion* of the parcel as subject to the A-1 classification.

Second, Schwartz argues that the focus on a "midsatisfactory use" led the judge to "dismiss out of hand" his originally proposed use of the prop-

---

[26] See text following n 22.

[27] *Schwartz v City of Flint*, n 4 *supra*, p 539.

erty. While the number of multiple-family units permitted by the judge's order was less than the number that Schwartz originally wished to construct, it does not appear that the judge failed to consider the use proposed by Schwartz.

Third, Schwartz argues that he had no advance notice of the plan adopted by the judge, and thus had no realistic opportunity to oppose the remedy proposed and adopted by the judge. Schwartz participated in the remand procedure and submitted a proposal for consideration by the judge. The judge was not required to provide the parties with a proposal for decision or advance notice of the precise contours of the remedy he was formulating.

Finally, Schwartz asserts that the restriction of the first tier to single-family homes and the second tier to duplexes, combined with the overall maximum of 140 units on the entire parcel, bears no relation to public health, morals, safety, or welfare. The judge considered several potential uses of the land as well as their anticipated effect on the surrounding properties and neighborhood. He did not clearly err in imposing separate restrictions on different portions of the property or in limiting the total number of residential units.

3

Schwartz asserts that the judgment entered by the judge constitutes an unconstitutional taking of his property without just compensation. He argues that, because the judge prohibited the use of the outlot as a means of access to and from the property, the judgment prohibits any and all use of the property. The city argues that the decision to prohibit access through the outlot was "invited" by Schwartz' own proposal to obtain a right-of-way over an adjoining privately owned parcel.

We are persuaded that the decision to prohibit access through the outlot was clearly erroneous. Schwartz had no enforceable agreement to obtain the proposed right-of-way over the adjoining parcel. While some streets[28] in the residential area south of the Schwartz parcel were narrow or without sidewalks, that does not justify a decision that, in effect, completely landlocks an otherwise developable parcel.

If local authorities perceive a potential safety problem due to an increase in traffic,[29] they might post reasonable restrictions or condemn private property to widen streets or add sidewalks or to provide a different means of ingress or egress to Schwartz' parcel.

The city urges that, if this Court decides that access to the Schwartz parcel must be provided over the outlot, the matter should be remanded once again to the circuit court for reconsideration of the appropriate use of the parcel in light of that decision. We decline to do so. After more than fifteen years, it is time for this litigation to come to an end so that Schwartz may develop his property if he wishes to do so.

C

We would vacate those portions of the judgment and order of the judge that prohibit access through the outlot and require that Schwartz obtain a right-of-way over an adjoining parcel. We would hold that until such time as other means of access

[28] Many of the streets in the residential area south of the Schwartz parcel are twenty feet wide.

[29] The Court of Appeals originally found that "the street and road system [is] adequate to accommodate the development of the plaintiffs' land under A-1, A-2, B or C classification." *Schwartz v City of Flint,* n 4 *supra,* p 539.

to and from the Schwartz parcel are in place, access may be provided through the outlot.

In all other respects, we would affirm the judgment and order of the circuit judge, as modified and affirmed by the Court of Appeals.

WILLIAMS, C.J., concurred with LEVIN, J.

ARCHER, J., took no part in the decision of this case.